United States Court of Appeals,

Fifth Circuit.

No. 93-1003.

R.L. BRYANT, Petitioner-Appellant,

v.

Wayne SCOTT, Director, Texas Dept. of Criminal Justice, Institutional Division, Respondent-Appellee.

Aug. 18, 1994.

Appeal from the United States District Court for the Northern District of Texas.

Before GARWOOD and EMILIO M. GARZA, Circuit Judges, and NOWLIN,[*] District Judge.

EMILIO M. GARZA, Circuit Judge:

Appellant, R. L. Bryant, was convicted of armed robbery and sentenced to life imprisonment by the state district court in Palo Pinto County, Texas. After exhausting state court remedies, Bryant petitioned for federal habeas corpus relief, pursuant to 28 U.S.C. § 2254 (1988), on claims of ineffective assistance of counsel and improper identification procedures. The United States magistrate judge recommended habeas relief based on Bryant's claim of ineffective assistance of counsel. The district court conducted an evidentiary hearing and denied habeas relief, holding that Bryant received effective assistance at trial, and was not subjected to impermissibly suggestive identification procedures. Bryant appeals, arguing that his trial counsel was ineffective for: (a) failing to investigate alibi witnesses; (b) not interviewing

_____

[*]District Judge of the Western District of Texas, sitting by designation.

1

eyewitnesses to the robbery; and (c) not interviewing the codefendant who offered to exonerate Bryant. We reverse and remand.

I

On May 14, 1982, two men robbed the North American Phillips Federal Credit Union in Mineral Wells, Texas. The perpetrators stole payroll checks and $2,000 in cash. Cindy Carpenter, the credit union's branch manager, was shot in the elbow during the robbery and later identified the gunman as Bryant. Ronnie Berkins was the other eyewitness to the robbery, who also identified Bryant, and testified that Bryant showed him a gun while leaving the credit union.

Bryant was indicted for armed robbery by a grand jury in Palo Pinto County, Texas. Bryant was later arrested and detained in Oakland, California, for a parole violation unrelated to this case. The State of Texas moved for Bryant's extradition from California, where Paul Trudell, from the Alameda County Public Defender's Office, represented Bryant in the ensuing extradition proceedings. The public defender's office investigated Bryant's whereabouts on the day of the robbery. Several potential alibi witnesses reported that Bryant was in California at or near the time of the robbery. In particular, Stanley Woods, Bryant's employer in California, indicated that Bryant began working for him on May 13 or May 14, 1982 and worked until the end of the month. Woods did not state that he actually saw Bryant on May 14, 1982. Harold Wilson stated that Bryant was in California at the time of the robbery, where

2

Wilson paid him $100 towards the purchase of a car engine.  Teresa Wilson also stated that Bryant sold her husband a car engine in California, but she was not sure whether this transaction took place on May 14 or May 15, 1982.  At Bryant's first extradition hearing, the Oakland Municipal Court found that Bryant could not have been in Texas on the day of the robbery and, therefore, the court did not extradite him to Texas.  However, after a second hearing before the Hayward Municipal Court, Bryant was extradited to Texas to stand trial in this case.

On January 12, 1983, John D. Moore was appointed to represent Bryant.  At their first meeting, Bryant told Moore that he wanted to subpoena several "material witnesses" from California and other places outside Texas.  Despite requests from Moore, Bryant never disclosed the names of any potential alibi witnesses until the pretrial hearing on Friday, March 18, 1983.  At the hearing, Bryant testified that Stanley Woods and "Mr. and Mrs. Wilson" knew he was in California at the time of the robbery.  Moore spoke with Judge Fitts about the procedure for subpoenaing out-of-state witnesses, but Moore never contacted any of the potential alibi witnesses before trial.

On Monday, May 21, 1983, the trial court denied Bryant's *pro se* motion for continuance[1] and convicted him of armed robbery.  The Texas Court of Appeals at Eastland affirmed Bryant's conviction,

---

[1]Although Moore represented Bryant at trial, Bryant filed his own pretrial motions, including a motion for continuance. Bryant also filed a *pro se* motion for new trial on April 6, 1983, which the trial court denied.

and Bryant did not seek discretionary review from the Texas Court of Criminal Appeals. Responding to one of Bryant's state petitions for a writ of habeas corpus, the Texas Court of Criminal Appeals ordered the trial court to develop additional facts in connection with Bryant's claim of ineffective assistance of counsel. The trial court found that Bryant had not supplied enough specific information about alibi witnesses before trial and concluded that Moore was effective as counsel.

After exhausting state remedies, Bryant petitioned for federal habeas corpus relief, pursuant to 28 U.S.C. § 2254 (1988). The United States magistrate judge recommended that Bryant be granted habeas relief on his claim of ineffective assistance of counsel and did not reach the claim of impermissible identification procedures. The magistrate judge held that Moore breached his "duty to investigate [Bryant's] alibi witnesses which [Bryant] has consistently maintained from his pre-trial hearing in 1983 throughout all his *pro se* pleadings to the present." The district court conducted an evidentiary hearing on Bryant's claims of ineffective assistance of counsel and improper identification. The district court held that Moore was "not ineffective in failing to discover Bryant's potential alibi witnesses, considering that Bryant refused to provide the necessary information to allow them to even begin to search until less than 72 hours before trial." The district court, therefore, denied habeas relief. Bryant appeals, contending that he received ineffective assistance of counsel.

Bryant argues that the district court erred in holding that he received effective assistance of counsel at trial. Bryant alleges that his appointed counsel, John D. Moore, was ineffective because he failed to interview or investigate crucial witnesses in the case, including: (a) alibi witnesses; (b) eyewitnesses to the crime; and (c) the codefendant who offered to exonerate Bryant.[2] "[A] state court's ultimate conclusion that counsel rendered effective assistance is not a fact finding to which a federal court must grant a presumption of correctness under 28 U.S.C. § 2254(d), but instead is a mixed question of law and fact." *Black v. Collins*, 962 F.2d 394, 401 (5th Cir.), *cert. denied,* --- U.S. ----, 112 S.Ct. 2983, 119 L.Ed.2d 601 (1992). We therefore independently decide whether counsel's conduct passes constitutional muster.[3]

---

[2]John D. Moore was first appointed as Bryant's counsel. After Moore requested additional assistance, the court appointed Mike A. Smiddy to assist Moore in Bryant's defense. Smiddy's conduct is not at issue on appeal, except to the extent that he assisted Moore from the time of the pretrial hearing until the completion of trial. As a matter of convenience, we only refer to Moore in this opinion, even when both Smiddy and Moore acted as Bryant's counsel.

[3]However, the subsidiary findings of a state court are entitled to a presumption of correctness under § 2254(d), *Andrews v. Collins,* 21 F.3d 612, 622 (5th Cir.1994), and similarly, where a federal district court has made its own factual findings, we may only review those findings for clear error. *Nealy,* 764 F.2d at 1176 (citing FED.R.CIV.P. 52(a)). A state court's findings may be overturned where they are not fairly supported by the record, 28 U.S.C. § 2254(d)(8); *Maggio v. Fulford,* 462 U.S. 111, 117, 103 S.Ct. 2261, 2264, 76 L.Ed.2d 794 (1983), and a district court's findings are clearly erroneous when, after considering all the evidence, we are "left with the definite and firm conviction that a mistake has been committed." *Williams v. Collins,* 16 F.3d 626, 630 (5th Cir.1994), *petition for cert. filed,* (U.S. June, 28, 1994) (No. 94-5004).

*Nealy v. Cabana,* 764 F.2d 1173, 1176-77 (5th Cir.1985).

We review Bryant's claim of ineffective assistance of counsel under the standards announced by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "First, a defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness,' with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance." *Black,* 962 F.2d at 401 (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064). Second, if counsel was ineffective, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. A claim of ineffective assistance of counsel will only merit habeas relief when a petitioner satisfies both prongs of the *Strickland* test. *See id.* at 687-97, 104 S.Ct. at 2064-69. The district court concluded that Moore effectively represented Bryant and, therefore, did not reach the question of prejudice.

In reviewing Bryant's ineffective assistance claim we must "judge[ ] the conduct of the defense according to the objective standard of the reasonable attorney," *Kyles v. Whitley,* 5 F.3d 806, 819 (5th Cir.1993), *cert. granted,* --- U.S. ----, 114 S.Ct. 1610, 128 L.Ed.2d 338 (1994), and "give great deference to counsel's assistance, strongly presuming that counsel has exercised reasonable professional judgment." *Ricalday v. Procunier,* 736 F.2d

6

203, 206 (5th Cir.1984). Accordingly, an attorney's strategic choices, usually based on information supplied by the defendant and gathered from a thorough investigation of the relevant law and facts, "are virtually unchallengeable." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066. We also observe that the reasonableness of an attorney's investigation may critically depend on the information forwarded by the defendant and the defendant's own strategic decisions about his representation. *See id.* (stating that "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable"). However, an attorney must engage in a reasonable amount of pretrial investigation and "at a minimum, ... interview potential witnesses and ... make an independent investigation of the facts and circumstances in the case." *Nealy,* 764 F.2d at 1177. The failure to interview eyewitnesses to a crime may strongly support a claim of ineffective assistance of counsel, *see Gray v. Lucas,* 677 F.2d 1086, 1093 n. 5 (5th Cir.1982) (noting that attorney's failure to investigate crucial witness may constitute inadequate performance), *cert. denied,* 461 U.S. 910, 103 S.Ct. 1886, 76 L.Ed.2d 815 (1983), and when alibi witnesses are involved, it is unreasonable for counsel not to try to contact the witnesses and "ascertain whether their testimony would aid the defense." *Grooms v. Solem,* 923 F.2d 88, 90 (8th Cir.1991), *cert. denied,* 461 U.S. 910, 103 S.Ct. 1886, 76 L.Ed.2d 815.

A

7

Bryant argues that Moore was ineffective for failing to investigate and interview potential alibi witnesses. Bryant contends that in his first meeting with Moore, around January 12, 1983, he specifically told Moore the names of alibi witnesses in California, and provided Moore with the business card of a California public defender, Paul Trudell, who had information relevant to Bryant's alibi defense. In contrast, Moore testified at the evidentiary hearing that Bryant refused to divulge the names or addresses of any potential alibi witnesses before the pretrial hearing on March 18, 1983, and that he first learned of Trudell and potential alibi witnesses at that time. The district court found Moore's version of the facts to be credible and stated that "Bryant was not forthcoming with any information to aid Moore in preparing an alibi defense until the [March 18 pretrial hearing]." We do not disturb the district court's credibility decision. *See Levrie v. Department of Army,* 810 F.2d 1311, 1314-15 (5th Cir.1987) (concluding it is not clear error for district court to adopt one of two equally possible views of evidence). Therefore, we agree with the district court's conclusion that Moore's failure to investigate Bryant's alibi defense *prior to the pretrial hearing* did not amount to ineffective assistance.

The trial court also found that Bryant "did not submit to trial counsel the names, addresses, or phone numbers of any alibi witnesses prior to trial[,] ... [and Moore] interviewed all witnesses made known to him prior to trial." *Ex parte Bryant,* No. 14,886, Second Supplementary Petition for Habeas Corpus at 13-14.

8

The state argues that these findings are presumptively correct, should not be disturbed, and adequately support the district court's conclusion that:

> [Bryant] withheld information that might have allowed his experienced court appointed attorneys to provide the best possible representation. [Bryant] essentially hog-tied his attorneys with his stonewalling and promises that his friends were working on his alibi witnesses. Bryant should not now be permitted to profit from his own planned course of conduct by blaming his attorneys for the consequences of his actions.

Record on Appeal, vol. 1, at 328-29. We find that the trial court's finding is not supported by the record, and therefore we disagree with the district court's conclusion that Moore's failure to investigate alibi witnesses following the pretrial hearing was reasonable professional conduct.

When Moore first met Bryant in January of 1983, Bryant wanted Moore to subpoena twenty-five "material" witnesses for his defense. At subsequent meetings, Moore continually asked Bryant for the names and addresses of Bryant's alibi witnesses, but Bryant failed to disclose such information, indicating that friends of his in California were "getting that [information] together." Therefore, while Moore did not acquire the names or addresses of Bryant's alibi witnesses at their meetings, he was cognizant of Bryant's interest in pursuing an alibi defense.[4] Then, at the pretrial hearing, Moore learned from Bryant's testimony that Stanley Woods,

---

[4]Bryant gave Moore a note at their first meeting which stated: "The alleged date of the offense suspect can prove his whereabouts. 15-people must be subpoena from state of California [plus] 10-people now in New York, New Jersey and Florida. All witnesses is material. Suspects [sic: suspect] wants all 25-people to be at the Jury Trial." Record on Appeal, vol. 1, at 316.

and Harold and Teresa Wilson were potential alibi witnesses.[5]  Also during the pretrial hearing, Moore had the opportunity to review the notes of Sergeant Metzger of the Oakland Police Department, who

<hr>

[5]The magistrate judge and district court considered several evidentiary exhibits, including:  (1) investigation notes from Sergeant Metzger of the Oakland Police Department, dated October 14, 1982;  (2) investigation notes from the Alameda County Public Defender's Office, from before November 24, 1982;  and (3) an affidavit from codefendant Marsaw, dated June 29, 1988.  Bryant also obtained affidavits from potential alibi witnesses—Linda Thompson and Irene Clayton—and submitted them to the district court after the magistrate judge's recommendation for habeas relief.  Maria Nava, an investigator for the Federal Public Defender's Office, testified at the federal evidentiary hearing that she spoke with Teresa Wilson about Bryant's whereabouts in California on the date of the robbery.

Stanley Woods, Bryant's employer in California, told an investigator of the Alameda County Public Defender's Office on July 29, 1982, that Bryant was working for him at the time of the armed robbery.  On July 15, 1982, Harold Wilson told the Alameda County Public Defender's Office that Bryant came to his home in California on the date of the robbery, where Wilson paid Bryant $100 towards the purchase price of a car engine.  Maria Nava testified that she interviewed Teresa Wilson shortly before April 8, 1992, and Mrs. Wilson stated that Bryant sold her husband a car engine on "May 12th or May 14th [or] ... around those days."

As the district court noted, "unlike most claims of uncalled witnesses, the record in this proceeding is saturated with the unexpected testimony of Petitioner's "alibi' witnesses."  Charles Marsaw, an eyewitness and codefendant in this case, stated in his affidavit of June 29, 1988, that Bryant was not the other perpetrator of the armed robbery.  Linda Thompson provided an affidavit, dated June 1, 1991, that Bryant sold Mr. and Mrs. Wilson a car engine at her house in Oakland, California, on the date of the robbery.  Irene Clayton, a resident of Oakland, signed an affidavit dated May 28, 1991, relating that Bryant called her on the date of the robbery to let her know that he would come by the following day to take her shopping.  She further stated that Bryant did take her shopping on the day after the robbery.  Margaret Pickett Sheppard told investigators from the Alameda County Public Defender's Office on July 29, 1982, that she saw Bryant in California on the day preceding the robbery.

had interviewed Stanley Woods concerning Bryant's whereabouts in California.[6]  Sergeant Metzger's notes contained Woods' name, address, and telephone number and indicate that Bryant "worked for [Woods] during the month of May—beg[inning the] 13-14" and continuing through the end of the month.  Record on Appeal, vol. 1, at 115-18.  Although Moore testified that Bryant never let him review the notes introduced at the pretrial hearing, the record shows that these items were delivered to Moore in open court.[7]

---

[6]Shortly after the robbery in Texas, Bryant became a suspect in a homicide in California.  Sergeant Metzger interviewed Stanley Woods about Bryant's potential involvement in the homicide.  Bryant was never charged with homicide in California.

[7]Certain papers and personal belongings were delivered to Bryant at the pretrial hearing.  These items were taken from Bryant when he was placed in custody in Palo Pinto County, Texas. The record reflects that the investigation notes of Sergeant Metzger were contained in the materials delivered to Bryant and Moore in open court.  The record reads:

> MR. MOORE:  Your Honor, we would like to request the Defendant be allowed to keep this particular group of papers that he's been looking over here between now and the time this trial is determined.
>
> THE COURT:  Do you find the papers you were testifying about?
>
> THE DEFENDANT:  I found one of them which is important to me.
>
> THE COURT:  What was that?
>
> THE DEFENDANT:  One of the affidavits—Well, it's not really an affidavit, it's for [sic:  from] the homicide detective in California [that] interrogated my employer.
>
>        *   *   *   *   *   *
>
> THE COURT:  All right.  Then this envelope there sitting in front of the Defendant that he's been

Thus, between Bryant's testimony and the police investigation notes, Moore had enough information, on March 18, 1983, to try to contact Mr. Woods and the Wilsons about Bryant's alibi defense.

Under § 2254(d)(8), we are not bound by a trial court's subsidiary findings when they are not fairly supported by the record. The trial court's findings—that Moore did not know the names, addresses, or phone numbers of alibi witnesses before trial, nor had the opportunity to interview such witnesses—is not fairly supported by the record, because Moore learned of Stanley Woods and Mr. and Mrs. Wilson at the pretrial hearing on Friday, March 18, 1983, almost seventy-two hours before trial. Thus, the record shows that Moore had information on potential alibi witnesses before trial, and had the opportunity to try to interview such witnesses.

Bryant testified at the pretrial hearing that he wanted to subpoena out-of-state witnesses because he understood the trial court to have determined "that affidavits wouldn't be any good here in this court, so [subpoenaing witnesses is] my only defense." State Record, vol. 2, at 26. During a recess in the pretrial hearing, Moore discussed the procedure for subpoenaing out-of-state witnesses with Judge Fitts.[8] Despite Bryant's clear reliance on an

> looking through and all of the contents thereof, let the record show that they have been delivered to Mr. Moore, one of the Defendant's attorneys.

State Record, vol. 2, at 23.

[8] *See* TEX.CODE CRIM.PROC.ANN. art. 24.28 § 4 (Vernon 1989) (allowing Texas courts to subpoena material witnesses from another state).

alibi defense, Moore admitted that he did not try to contact potential alibi witnesses in California. Moore abdicated his responsibility of investigating potential alibi witnesses and failed to "attempt to investigate and to argue on the record for the admission of the alibi witnesses' testimony." *Grooms v. Solem,* 923 F.2d 88, 91 (8th Cir.1991). Moore's failure to investigate potential alibi witnesses was not a "strategic choice" that precludes claims of ineffective assistance. *See Nealy,* 764 F.2d at 1178 (according deference to counsel's strategic decisions). Moore stated that he "would have loved to have had the [alibi] evidence" and that "it would have been a different type of trial if we had some alibi witnesses." Record on Appeal, vol. 2, at 190, 206. Even if Moore had first learned of the alibi witnesses on the first day of trial, he "nevertheless should have contacted the witnesses and made his record to the trial court as to the significance of the alibi and the fact that it was newly discovered." *Grooms,* 923 F.2d at 91. Since Moore was aware of Bryant's interest in pursuing an alibi defense, and was given enough information to contact Woods in California, it was incumbent upon Moore to at least try to contact Woods in California. The record also reveals that Bryant was a friend of Harold Wilson for about two years before the robbery, and most probably knew the first names of "Mr. and Mrs. Wilson." Record on Appeal, vol. 1, at 102-03. Moore should have asked Bryant for the first names of Mr. and Mrs. Wilson, so that he could have tried to contact them in California. Additionally, Bryant is serving a sentence of life imprisonment for his

13

participation in the robbery, and given the seriousness of the offense and the gravity of the punishment, counsel should have tried to investigate the potential alibi witnesses. *Cf. Loyd v. Whitley,* 977 F.2d 149, 157 (5th Cir.1992) (stating that "defense counsel's failure to pursue a crucial line of investigation in a capital murder case was not professionally reasonable"), *cert. denied,* --- U.S. ----, 113 S.Ct. 2343, 124 L.Ed.2d 253 (1993).

Thus, we disagree with the district court's conclusion that Moore was "hog-tied" or "stonewalled" from making any investigation of alibi witnesses. Moore knew of three alibi witnesses before trial and should have made some effort to contact or interview these people in furtherance of Bryant's defense.[9] Moore's complete

---

[9]The district court relied on *Kramer v. Butler,* 845 F.2d 1291 (5th Cir.), *cert. denied,* 488 U.S. 865, 109 S.Ct. 168, 102 L.Ed.2d 138 (1988), to conclude that Bryant's failure to disclose the names of alibi witnesses before the pretrial hearing precludes a claim of ineffective assistance of counsel. In *Kramer,* the habeas petitioner alleged that counsel's failure to pursue "all possible leads in connection with a potential insanity defense—in particular, by not ensuring that [petitioner] was tested for temporal lobe epilepsy, a possible cause of "blackouts' or "temporary psychoses'—[demonstrated that his] attorneys failed to provide him with effective assistance." *Id.* at 1293. *Kramer* held that the conduct of the petitioner's attorneys was objectively reasonable. The district court concluded that *Kramer* is analogous to this case because both situations involve a habeas petitioner who did not disclose "necessary information" about a defense, sufficiently in advance of trial. Thus, the district court reasoned that "[h]ad Bryant been forthcoming earlier with any of the alleged exculpatory information he believes central to his defense, then Moore probably would have been compelled to go beyond his review of the District Attorney's file and a thorough reading of the indictment returned in Bryant's case. Under such circumstances Moore would have had an indication as to how to prepare the type of defense his client envisioned." The district court's reliance on *Kramer* is misplaced, because *Kramer* involved exculpatory evidence never discussed before trial, whereas Bryant named exculpatory witnesses at the pretrial hearing. Moore was on notice that

14

failure to investigate alibi witnesses fell below the standard of a reasonably competent attorney practicing under prevailing professional norms.[10]

B

Furthermore we find that Moore's failure to interview eyewitnesses to the crime was constitutionally deficient representation. There were two eyewitnesses to the armed robbery of North American Phillips Federal Credit Union. One was Cindy Carpenter, the branch manager of the credit union, who identified Bryant as the individual who shot her in the commission of the robbery. The other was Ronnie Berkins, who walked into the credit union as Bryant was making his getaway. Moore did not interview either Carpenter or Berkins and restricted his pretrial investigation to discussions with Bryant, review of the indictment against Bryant, and examination of the prosecutor's file.

Moore should have interviewed the eyewitnesses. Because there was no physical evidence connecting Bryant with the crime, the

---

Bryant wanted to pursue an alibi defense and should have investigated alibi witnesses as soon as he learned of their identities.

[10]The state suggests that the relationship between Bryant and Moore was strained, with Bryant distrusting Moore and refusing to disclose information about alibi witnesses. *See Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066 (noting that information supplied by client critically affects what investigation decisions are reasonable). However, a client's uncooperativeness does not diminish counsel's duty to investigate crucial witnesses, once the identity of those witnesses is made known to counsel. *See Bell v. Georgia,* 554 F.2d 1360, 1361 (5th Cir.1977) (concluding that attorney's performance was unreasonable where he knew of alibi witnesses and did not contact them because accused agreed to contact witnesses himself).

15

eyewitness identification of Bryant at the crime scene was the cornerstone of the state's case in chief. Consequently, information relevant to Bryant's defense might have been obtained through better pretrial investigation of the eyewitnesses, and a reasonable lawyer would have made some effort to investigate the eyewitnesses' testimony. *See Kemp v. Leggett,* 635 F.2d 453, 454 (5th Cir.1981) (granting habeas relief where counsel failed to interview single eyewitness or character witnesses); *Gaines v. Hopper,* 575 F.2d 1147, 1149 (5th Cir.1978) (affirming habeas relief where, *inter alia,* counsel failed to interview eyewitnesses).

The state argues that Moore was not obligated to interview Carpenter or Berkins because their testimony was "vigorously attacked" on cross examination. This argument is unpersuasive. The fact that Moore's cross examination was effective does not necessarily indicate that a reasonable lawyer, viewing the trial *ex ante,* would have regarded an interview of the eyewitnesses as unnecessary. *See Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 (requiring courts to "reconstruct the circumstances of counsel's conduct from counsel's perspective at the time [of trial]," without the "distorting effects of hindsight"). Moreover, assuming that Moore's cross examination was effective, that is not to say it could not have been improved by prior investigation. Given the importance of eyewitness identification to Bryant's case, Moore did not perform as a reasonable attorney practicing under prevailing professional norms.

C

16

Finally, Moore's failure to interview codefendant Marsaw is inconsistent with reasonable professional conduct. Marsaw is a codefendant and eyewitness who confessed to the robbery and maintains that Bryant is not the other perpetrator of the crime.[11] Moore admits that, despite a request from Bryant, he made no attempt to locate or interview Marsaw. The state argues that Moore's failure to interview Marsaw was a "strategic decision well within the domain of competent trial counsel." Because Marsaw knew Bryant in California, had prior convictions, and had pled guilty to the robbery, the State argues that Marsaw's testimony would not have been credible or persuasive to the jury. *Cf. United States v. Vergara,* 714 F.2d 21, 23 (5th Cir.1983) (noting that it is not uncommon for person who has been convicted of crime to take full responsibility and exculpate codefendant). We disagree. Although factors tending to diminish Marsaw's credibility might support a strategic decision not to call Marsaw at trial, those considerations do not suggest that Moore's total failure to investigate Marsaw's testimony was a strategic decision. Without speaking to Marsaw, Moore was ill equipped to assess his

---

[11]Marsaw's affidavit states that:

> The other participant [in the robbery] was a male. The other participant in the robbery was not Roy Lee Bryant, A. Sabr Muhammad. At the time of this robbery he was in California. I know this personally because of a phone call I had personally placed to California, prior to this robbery here in the state of Texas. I have told several law enforcement officers that Roy Lee Bryant did not commit this robbery with me....

Record on Appeal, vol. 1, at 325.

17

credibility or persuasiveness as a witness, despite the objective factors tending to impugn Marsaw's credibility.[12] Accordingly, Moore's performance was inadequate and does not pass the performance prong of the *Strickland* test. *See Henderson v. Sargent,* 926 F.2d 706, 711 (8th Cir.1991) (stating that "[c]ounsel has "a duty ... to investigate all witnesses who allegedly possessed knowledge concerning [the defendant's] guilt or innocence.' ") (quoting *Lawrence v. Armontrout,* 900 F.2d 127, 130 (8th Cir.1990), *modified on other grounds,* 939 F.2d 586 (8th Cir.), *cert. denied,* --- U.S. ----, 112 S.Ct. 915, 116 L.Ed.2d 815 (1992)).

In summary, we hold that counsel's failure to investigate alibi witnesses and interview eyewitnesses is unprofessional conduct falling below the standard of a reasonably competent attorney practicing under prevailing professional norms. Moore's representation, therefore, fails the performance prong of the *Strickland* test,[13] and we remand for a determination of whether

---

[12]Moore admitted that all he knew about Marsaw's prior convictions was relayed to him by Bryant. Moore made no independent investigation of Marsaw's criminal record, the circumstances surrounding his convictions, or his location.

[13]We do not hold that the performance prong of *Strickland* always requires interview of every claimed eyewitness, alibi witness, and/or assertedly exculpating criminal co-participant. These matters ultimately depend on the overall context of the case. In this connection, we recognize that counsel does not have unlimited time and that counsel's judgment in the effective use of time is generally entitled to deference. Moreover, for example, the need to interview an eyewitness may in part depend on, among other things, the theory of defense; similarly, results of interviewing certain witnesses or other investigation may indicate that further pursuit of additional asserted witnesses will likely be a waste of time. Here, however, defense

counsel's defective performance prejudiced Bryant's case.[14]

### III

For the forgoing reasons we REVERSE and REMAND to the district court for a determination of whether Moore's omissions satisfy the prejudice requirement of *Strickland v. Washington,* 466 U.S. at 694, 104 S.Ct. at 2068.

---

counsel, despite knowing of Bryant's at least colorable alibi, did essentially no pre-trial investigation.

[14]Bryant also argues that the district court heard newly discovered evidence that established his alibi defense and supported his claim of "actual innocence." Bryant argues that the district court erred in holding that his actual innocence claim provided no basis for relief. In *Herrera v. Collins,* 954 F.2d 1029 (5th Cir.1992), we considered whether two newly discovered affidavits supported petitioner's claim of actual innocence in a capital murder case. We held that it "is well established that claims of newly discovered evidence, casting doubt on the petitioner's guilt, are not cognizable in federal habeas corpus." *Id.* at 1034. The Supreme Court has affirmed our decision, stating that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief...." *Herrera v. Collins,* --- U.S. ---- , ----, 113 S.Ct. 853, 860, 122 L.Ed.2d. 203 (1993). Thus, Bryant's claim is without merit.