# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

m 99-10601
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

CHARLES HARDIN MURPHY, JR.,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas
(3:91-CR-376)

April 14, 2000

Before SMITH, BARKSDALE, and
PARKER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Charles Murphy appeals the denial of his motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, claiming ineffective assistance of counsel and prosecutorial misconduct. We affirm.

I.
On September 26, 1991, a clean-shaven male entered the Southwest Savings Bank, Dallas, Texas, demanded money at gunpoint from tellers Garrett and Alexander,[1] and absconded with $5,794. Garrett and Alexander gave detailed descriptions of the robber. Alexander also identified a .38 caliber pistol, which was recovered, approximately a month later, from a Mercury Sable automobile driven by Murphy, as either the same weapon or identical to the one brandished at her during the robbery.

Darryl Neff, a bank customer, observed the robber leave the bank and enter a blue Honda.

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] These facts are taken almost verbatim from our opinion on Murphy's direct appeal. *See United States v. Murphy*, 996 F.2d 94 (5th Cir. 1993).

Later on the day of the robbery, the car was recovered a few blocks from the bank. Its ignition had been damaged so that it could be operated without a key. A police investigator testified that the damage to the ignition could have been accomplished with a dent puller.

On October 3, 1991, a clean-shaven male entered the United Savings Bank, Dallas, Texas, approached one of the tellers, and robbed the teller at gunpoint using a .38 caliber pistol. Ms. Irvin, who was in the next teller's booth, gave a detailed description of the robber. She observed the robber leave the building and enter a tan car. Before he exited, she activated her surveillance camera. Some of the money taken during the second robbery contained an electronic tracking device concealed in a cutout of the center of some of the bills.

A light colored Honda was found approximately one block from the United Savings Bank shortly after the robbery. Its ignition had been altered in a manner similar to that of the blue Honda. On the same day as the first robbery, a red Honda was stolen from a location close to Southwest Savings Bank. It was found after the second robbery, on October 5, 1991, located around the corner from Murphy's residence. The ignition had been removed in a manner similar to that of the other two cars. Found in the vehicle was a photograph given to Murphy by a friend, a beer can with Murphy's fingerprint on it, a tracker dollar bill with the center removed, and a bag containing assorted screwdrivers, pliers, and a dent puller. None of the items was in the vehicle before its theft.

Approximately one month later, a police officer made a routine traffic stop of a Mercury Sable near Cap City, Texas. Murphy was driving, and Randy Floyd was a front seat passenger. While the officer was performing a license and warrant check, Floyd drove the Sable away, leaving Murphy by the roadside. The officer pursued and overtook Floyd a short distance down the road. Murphy fled on foot but was located and arrested the next day.

The Sable contained a rental agreement in Murphy's name, a .38 caliber short barrel revolver that matched the one used in both robberies, a police scanner with a book of police frequencies, a collection of tools (including a dent puller), a pair of sunglasses, and a bloody syringe located on the drivers side of the car. Richard Crum, an FBI agent who specialized in firearms and tool mark identification, testified that the tool marks on the ignitions of the blue and tan Hondas could have been made with some of the tools found in the red Honda or the Sable.

Floyd, who had known Murphy for ten or more years, identified him as the robber depicted in the surveillance photos. Floyd further testified that Murphy offered him $1,000 to rent a home for Murphy in Floyd's name and that Murphy instructed him to drive off in the Sable when the two men were stopped.

Several witnesses of the two robberies identified Murphy as the robber of the two banks. Murphy was convicted of two counts of robbery of a financial institution in violation of 18 U.S.C. §§ 2113(a) and (d) and two counts of carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c).

## II.

Murphy alleges six instances of ineffective assistance of counsel and two instances of prosecutorial misconduct (knowingly using perjured testimony and knowingly withholding exculpatory identification evidence). The district court rejected Murphy's claims of ineffective assistance on the merits and found he was procedurally barred from raising his claims of government misconduct.[2]

We review ineffective assistance claims under the two-prong standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). We have discussed the first prong as follows:

---

[2] Murphy filed his § 2255 motion before the effective date of the AEDPA, so he needs no certificate of appealability. *See United States v. Carter*, 117 F.3d 262, 264 (5th Cir. 1997).

To obtain relief, a criminal defendant must first demonstrate that counsel's performance was deficient. . . . The proper standard for measuring counsel's performance under the first prong of [*Washington*] is reasonably effective assistance. That is, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Our scrutiny of counsel's performance must be highly deferential, and we must make every effort to eliminate the distorting effects of hindsight. . . . Under [*Washington*], there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

*Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (internal citations and quotation marks omitted).

The second *Washington* prong requires the defendant to demonstrate that counsel's deficient performance prejudiced the defense:

To satisfy the prejudice prong of [*Washington*], the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. The defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case, [b]ut it is not enough . . . that the errors had some conceivable effect on the outcome of the proceeding.

*Id*. (internal citations and quotation marks omitted).

If one of the *Washington* prongs is determinative, we need not consider the other. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). Murphy bears the burden of demonstrating both *Washington* elements by a preponderance of the evidence. *See Martin v. Maggio*, 711 F.2d 1273, 1279 (5th

Cir. 1983). We review findings of fact made in the course of deciding an ineffectiveness claim for clear error but review the performance and prejudice components *de novo*. *See Motley*, 18 F.3d at 1226.

Murphy raised the claims of prosecutorial misconduct for the first time in his § 2255 motion.

After conviction and exhaustion or wavier of any right to appeal, we are entitled to presume that the defendant stands fairly and finally convicted. A defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude, and may not raise an issue for the first time on collateral review without showing both "cause" for his procedural default, and "actual prejudice" resulting from the error. This cause and actual prejudice standard presents a significantly higher hurdle than the plain error standard that we apply on direct appeal.

*United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (en banc) (internal citations and quotation marks omitted). The "actual prejudice" standard requires more than a showing of possibility of prejudice: The defendant must show that the trial errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).[3]

III.
A.

Murphy first claims his counsel was ineffective for failing to interview and investigate Modena Harvey, the sister-in-law of Murphy's mother. Murphy claims that Harvey could have placed Murphy at the home

---

[3] Murphy incorrectly argues both that the district court should not have considered procedural default and that this court should not do so. *See Wiggins v. Procunier*, 753 F.2d 1318, 1321 (5th Cir. 1985).

of Edna Murphy (Murphy's mother) on the day of the October 3 robbery.

While Murphy claims his counsel never investigated Harvey, his counsel, by affidavit, asserts that he gave the government Harvey's name as a potential alibi witness, but chose not to present her testimony because he believed it would contradict other alibi testimony. Murphy's counsel did call Murphy's mother, sister, and brother-in-law to establish Murphy's presence at Edna Murphy's home. Murphy's allegation thus fails to demonstrate that his counsel was deficient, and Murphy further fails to demonstrate the requisite prejudice if there were such a deficiency: The potential duplicative testimony of one more witness related to Murphy does not undermine confidence in Murphy's convictions.[4]

## B.

Murphy contends that his counsel was ineffective for not interviewing potential defense witnesses and for not interviewing eyewitnesses to the crimes. The potential defense witnesses are Susan Murphy (Murphy's estranged wife) and Anthony Tartarilla (Murphy's friend).[5]

Susan Murphy's affidavit states that Murphy had a full mustache on October 1 and 5. Murphy argues Susan would have testified that Murphy had obtained money by writing bad checks on a closed bank account, thereby explaining Murphy's possession of money and his reason for fleeing police.

Murphy's counsel, by affidavit, cites two reasons for not calling Susan to testify. First, Murphy had given conflicting stories concerning the source of his money, and therefore counsel believed the testimony could constitute perjury. Second, it would not have been strategically sound to implicate Murphy in another felony solely to remove the limited implication of guilt a jury might draw from possession of money and flight.

Although Susan's testimony concerning Murphy's mustache would have corroborated similar testimony of Edna Murphy and Mary Tartarilla, its absence does not constitute *Washington* prejudice. The decision not to call Susan to testify to Murphy's felonious behavior of writing bad checks was a legitimate strategic decision: "[A]n attorney's strategic choices, usually based on information supplied by the defendant and gathered from a thorough investigation of the relevant law and facts, are virtually unchallengeable." *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994) (internal quotation marks omitted).

Murphy further alleges that Anthony Tartarilla would have testified to the presence of Murphy's mustache in early October. Once again, the lack of this corroborating testimony, given the substantial evidence of Murphy's guilt, does not constitute *Washington* prejudice.

Murphy's contention that counsel was ineffective for failing personally to interview every eyewitness is likewise unavailing.[6] Murphy's counsel either personally interviewed, had an investigator interview, or at least reviewed the reports of, every witness before that witness testified. As the district court found, given the witnesses' fairly consistent identification of Murphy as the robber and the incriminating evidence found in the red Honda and Sable, it was not unreasonable for counsel to decide that further

---

[4] Although organizationally this opinion considers each claim of ineffective assistance independently, we recognize and apply the *Washington* prejudice element as a totality. All of Murphy's claims of prejudice, considered together, do not undermine confidence in his convictions.

[5] Murphy also alleges ineffective assistance for failure to interview Mary Tartarilla, but Mary was interviewed by Murphy's counsel prior to her testimony at trial. She testified that Murphy always wore a mustache, including in late October 1991.

[6] This allegation is based solely on eyewitnesses' testimony, in response to questioning by Murphy's counsel, that they had never spoken to his counsel previously.

investigation of eyewitnesses was unnecessary. Further, Murphy fails to assert any prejudice that occurred because of the alleged failure to interview.

### C.

Murphy avers that counsel was ineffective for failing to object during the cross-examination of the final defense witness, FBI Special Agent Skillestad, who identified a photograph as the photograph of Murphy that bank tellers had identified as depicting the robber. Because no witness had so testified during the government's case-in-chief, Murphy argues that this in effect permitted the government to reopen its case by exceeding the scope of direct examination.

Murphy's counsel argues that not objecting was a strategic decision to avoid drawing undue attention to the testimony. Even were such a decision unreasonable, Murphy fails to demonstrate prejudice, because there is no reason to believe the court would not have allowed the government to reopen its case to elicit the testimony.

Murphy also complains because his counsel did not object when Skillestad gave the possibly erroneous testimony that Rukshana Khan, a teller involved in the October 3 robbery, was shown six photographs and eliminated four. Khan actually testified that she was shown around six to eight photographs, and narrowed it down to two.[7] This minor discrepancy did not prejudice Murphy,[8] and therefore he has failed to demonstrate *Washington* prejudice.

### D.

Murphy alleges that his counsel was ineffective for failing to investigate the relevant law and in failing to present available witnesses supporting his chosen line of defense. The chosen defense was that Murphy did not commit the robberies and that the surveillance photographs were actually the best evidence for the defense because Murphy looked considerably different from the individual depicted in the photographs. Counsel presented this defense, encouraged the jury to compare the surveillance photographs with the appearance of Murphy at trial, argued that eyewitnesses' descriptions were inconsistent, presented Murphy's alibi for October 3, and presented evidence that Murphy had not been clean-shaven for years.

What counsel failed to do was to ask Murphy's mother, sister, and brother-in-law whether Murphy was the person depicted in the photographs. Given their testimony of Murphy's alibi, and that Murphy wore a mustache, this failure is not sufficient to demonstrate *Washington* prejudice. Counsel's decision to rely primarily on the jurors' own comparison of the surveillance photographs and Murphy's presence at trial was not unreasonable, as evidenced by the fact that a teller who identified a photograph of Murphy could not identify him in the courtroom.[9]

### E.

Murphy contends that his counsel was ineffective for failing to object to prejudicial evidence, a two-sided fingerprint card bearing Murphy's fingerprints. The front of the card contained four of Murphy's alleged aliases, and the back bore the notation "armed and dangerous." The government introduced the card to show that a fingerprint found on a beer can in the red Honda was Murphy's, but the

---

[7] Another agent's deposition states that Khan was shown eight photographs. Khan's testimony regarding the number of photographs was as follows: "I don't remember exactly but it was around six to eight. I am not sure but I narrowed it down to two."

[8] This is especially true given the fact that Murphy's counsel did verify on redirect that Skillestad was *not* the agent who presented the photo-array to Khan.

[9] Murphy likewise contends that his counsel was ineffective for not obtaining an expert to compare his appearance to the depiction in surveillance photographs. Given the stark difference in appearance, it was not unreasonable to present this argument to the jury without expert evidence.

government substituted a photocopy of the front of the card to be given to the jury.

The front of the card also contained statistical information concerning Murphy, in particular that he was a white male, 5'9" tall, who weighed 175 pounds. Murphy's counsel wanted this evidence before the jury to impeach the reports of eyewitnesses that differed from these statistics. Even were it unreasonable for counsel not to require the aliases to be blocked out or otherwise removed from the exhibit, Murphy did not suffer *Washington* prejudice.

F.

Murphy argues that counsel was ineffective for failing to investigate circumstances regarding his flight from police after he and Floyd were stopped in a routine traffic stop. Prior to trial, Murphy's counsel asked Murphy whether there was evidence that could establish other reasons why Murphy might have fled. Murphy responded in the affirmative, namely that (a) there were substantial amounts of heroin and cocaine in the car, (b) Murphy had recently learned that there was an outstanding warrant for his arrest resulting from a parole violation, and (c) Murphy had written a large number of bad checks on a closed account.

Murphy's counsel did not present any of this evidence, and the court gave a flight instruction[10] as part of the jury charge. His counsel claims that it was a strategic decision not to introduce evidence of the several other crimes committed by Murphy solely to avoid the inference of guilt from evidence of flight. Counsel instead argued that a flight instruction was improper because there was no direct evidence that Murphy knew he was a suspect in the bank robberies. Murphy contends that it was ineffective assistance not to have raised the other-crimes evidence with the court.

Murphy cites *United States v. Myers*,

550 F.2d 1036, 1048 (5th Cir. 1977), in which this court held evidence insufficient to warrant giving a flight instruction on retrial. We noted that the probative value of flight as an admission by conduct was dependent on, *inter alia*, the inference from consciousness of guilt to consciousness of guilt concerning the crime charged. *See id*. at 1049. Where the defendant could be fleeing based on consciousness of guilt of a crime other than that before the jury, a flight instruction may be improper. *See id*. at 1050.

In *United States v. Kalish*, 690 F.2d 1144, 1155 (5th Cir. 1982), we noted that "we have consistently held evidence of flight to be relevant evidence," and thus "our standard of review is whether the trial judge has abused his discretion in determining that the probative value of the evidence outweighs the danger of unfair prejudice." We distinguished *Myers* as articulating the test for when a flight instruction is proper, as opposed to the test for when evidence of flight is admissible. *See id*. at 1156. Moreover, we made plain that whereas on the record in *Myers* a flight instruction was not proper, it can be proper even when the defendant may have a guilty conscience for multiple offenses. *See id*. at 1156-57.

There was circumstantial evidence that Murphy's flight was related to the robberies, for investigators had spoken with members of Murphy's family, and the Sable contained relevant evidence of the robberies (tools and the .38 caliber pistol). Further, even were Murphy's counsel deficient in not presenting the other-crimes evidence, the error did not rise to the level of *Washington* prejudice.[11]

---

[10] A "flight instruction" is an instruction on the inference that flight potentially demonstrates a consciousness of guilt.

[11] Murphy also argues that the court abused its discretion by ruling without an evidentiary hearing. No hearing was required, because the existing documentation conclusively demonstrates that Murphy is not entitled to relief. *See United States v. Drummond*, 910 F.2d 284, 285 (5th Cir. 1990).

### IV.

Murphy argues that newly discovered evidence proves that the government knowingly used perjured testimony. He suggests also that the new evidence shows the government knowingly withheld exculpatory identification evidence.

### A.

The allegedly perjured testimony was given by Skillestad and Floyd. Skillestad may have mistakenly testified that Khan was shown six photographs, if she was actually shown eight. Floyd mistakenly testified that he had a prior conviction for conspiracy to import controlled substances, when his conviction actually was for conspiracy to obtain a controlled substance by fraud.[12] These *de minimis* mistakes do not rise to the "actual prejudice" standard required by *Shaid*.

### B.

Murphy contends the government knowingly withheld exculpatory evidence that Donald Morris, Alan Duke, and Carlos Kirkland were shown bank surveillance photographs and stated that Murphy was not the one depicted therein. Murphy likewise contends that the government used unconstitutionally suggestive identification procedures with Janieth Moore and Donald Morris.

Morris, Duke, and Kirkland are friends of Murphy's who were not eyewitnesses to the robberies or any other relevant events. Moore and Morris did not testify, and Murphy does not allege any link between the identification procedures used with those individuals and the identification procedures used for those who did testify.

Even assuming Murphy could satisfy the "cause" bar of procedural default, he fails to demonstrate actual prejudice resulting from the alleged errors. Given the substantial evidence of his guilt, and further that the defense strategy was that the jury could recognize that he was not the person depicted in surveillance photographs, the absence of this information did not prejudice Murphy's trial.

AFFIRMED.[13]

---

[12] Floyd also testified that he had been convicted of burglary, possession of cocaine, and theft offenses.

[13] Murphy's motions for oral argument by teleconference and for appointment of counsel to conduct oral argument are DENIED.