# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 8, 2013

Lyle W. Cayce
Clerk

No. 12-30077

BENEDICT KATELY,

Petitioner - Appellee

v.

BURL CAIN, WARDEN, LOUISIANA STATE PENITENTIARY,

Respondent - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before DeMOSS, SOUTHWICK, and HIGGINSON, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

A Louisiana state court denied the petitioner's application for a writ of habeas corpus. The federal district court subsequently granted the petitioner habeas relief, determining that the state court's decision was based on an unreasonable determination of the facts. We REVERSE.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 13, 2002, New Orleans police officers responded to a call about a shooting. They found Kendron Anderson lying on the floor in an apartment with a gunshot wound. He died at a hospital as the result of a gunshot wound to the chest. Days later, 14-year-old Ernestine Howard told a detective that, on the night of the shooting, she was sitting with the victim on

No. 12-30077

the porch when two men approached.  One of the men had dreadlocks, and the other wore a towel over his head.

The following day, the detective learned that Benedict Kately may have been responsible for the shooting.  The detective compiled photographs, including a picture of Kately, and took them to Howard for identification.  After looking through two groups of photographs, Howard identified Kately as the person who shot the victim.

The detective, his partner, Howard, and her mother went to the police station where Howard gave a recorded statement.  For the first time, Howard identified the shooter by name and provided other details about the night of the shooting.  After a warrant was issued, Kately surrendered at a police station.

Kately was indicted for first-degree murder in Louisiana district court.  At trial, Howard testified that while she and the victim were on the porch, Kately and his companion approached Howard and the victim about marijuana, and then Kately shot the victim.  Howard testified that, after the shooting, she dreamed about the events and realized she knew the shooter from the neighborhood.  On the witness stand, Howard repeated her identification of Kately as the person who shot the victim.

Kately was convicted of first-degree murder and sentenced to life imprisonment.  Both the conviction and sentence were affirmed on appeal.

Kately applied for post-conviction habeas relief in state court, claiming that he received ineffective assistance of counsel. At a hearing, Kately's cousin Tyrone Jordan testified he was with Kately the night of the shooting.  Between 9:30 and 10:00 p.m., the two arrived at a location one block from the murder scene and saw police vehicles.  Jordan claimed he was never contacted by

No. 12-30077

Kately's attorney but did attend the trial and was prepared to testify. Jordan claimed he approached an investigator about his knowledge of the events but never spoke to an attorney.

Devone Mitchell, another one of Kately's relatives, testified she was standing near the apartment building when the shooting occurred. Mitchell stated that seconds before she heard gunshots, two men walked near the building. Mitchell noticed that one of them may have had a towel around his head, but neither of the men were Kately. Mitchell admitted she did not see the shooting. When asked if she were ever contacted by Kately's attorneys, Mitchell responded, "I never knew who I was speaking with until it was time for court." Counsel asked Mitchell to repeat what she said, at which point Mitchell said, "I don't recall speaking to anybody."

Like Jordan, Mitchell attended the trial and was prepared to testify. She claimed she spoke to an attorney at the trial but was not called to testify. Later, Mitchell stated she never spoke to the attorney before the day of the trial, but Mitchell admitted she was aware that she could be called to the stand.

A third individual, referred to at the hearing as Marvin Blake, failed to attend the state-court hearing. The court asked counsel what Blake would say if he were present. Counsel replied that Blake would testify he witnessed the shooting and that Kately did not shoot the victim. Opposing counsel countered that Blake left the scene and was not present during the actual shooting.[1]

Harry Boyer, Jr. had been Kately's attorney. He testified that he filed a notice of intent to call three alibi witnesses at trial. Boyer claimed he learned

---

[1] Blake's name did not appear on the alibi witness list. Howard testified that this individual left the immediate scene of the crime before Kately and his companion directly approached Howard and the victim.

No. 12-30077

of these witnesses through Kately or the police report. Boyer stated that he personally conducted an investigation.[2] When asked whether he spoke to these individuals "at any point before trial," Boyer responded, "I'm sure we did. I did, [co-counsel] did. I believe during the trial, I don't recall who spoke to them."

On cross-examination, Boyer testified that he, an investigator, and co-counsel spoke to Jordan before the trial. Boyer then stated, "The three witnesses that are on the alibi list, at some point in time – I can't tell you if it was 10 minutes before they were getting called to testify, or the day before, the week before. But I believe there [were] several conversations with those folks." Boyer further said he interviewed Kately before the trial.

When asked about his decision not to call these witnesses at trial, Boyer explained he was worried they "would do more harm to Mr. Kately's defense than good" because the State's only eyewitness remembered the shooter's name in a dream. Boyer further reasoned that the alibi witnesses did not witness the crime, and their uncorroborated testimonies were ultimately not "strong enough to overcome the possibility that they would hurt [Kately's] case."

The state habeas court issued a written judgment. It provided, in part, "Kately's trial counsel, Harry Boyer, testified that he did interview all potential witnesses, as did his investigator and co-counsel." Without further discussion about counsel's investigation, the court then discussed Boyer's decision not to call any witnesses, concluding Boyer's assistance as counsel was not ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984). Therefore, the state habeas court denied Kately's application for post-conviction relief.

---

[2] Boyer was asked, "But [did you], in fact, conduct an investigation in this case[?]" Boyer answered, "Sure. Not only did I conduct an investigation, I think we had an investigator that worked for the Indigent Defense Program, conducting an investigation."

No. 12-30077

Kately filed an application for a writ of habeas corpus in the United States District Court for the Eastern District of Louisiana. *See* 28 U.S.C. § 2254. Kately claimed he received ineffective assistance of counsel because his attorneys did not investigate and interview alibi witnesses who would have testified that Kately did not shoot the victim.

A magistrate judge issued a report and recommendation to dismiss the application. The district court disagreed. The court granted Kately's habeas relief, concluding that "Boyer's performance was deficient if he did not interview [Jordan and Mitchell] prior to trial." Noting the state judgment's brevity as to Boyer's investigation, the district court questioned whether the state habeas court found as a matter of fact that Boyer questioned these two alibi witnesses. The district court concluded that

> for the state court to reach the decision it did – denying relief – it would have needed to find that Boyer, *in fact*, interviewed Mitchell and Jordan in advance of trial to ascertain their potential testimony. Such a finding would *not* be supported by the evidence adduced at the evidentiary hearing [before the state court].[3]

The district court also determined there was a reasonable probability that Kately suffered actual prejudice because of counsel's deficiency: Had Boyer interviewed these two alibi witnesses, Boyer would have been able to develop a defense to the State's evidence, which rested on a single eyewitness's testimony,

---

[3] The district court also stated:

Although the state court made no specific determination as to whether Boyer interviewed witnesses and investigated the case, the Court finds that based on the failure of proof that any such investigation occurred, the state court's decision denying post-conviction relief outright was "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

No. 12-30077

that "would have led the jury to conclude that the State had not met its burden of proof beyond a reasonable doubt." The district court noted Boyer's decision to refrain from calling these witnesses was arguably a reasonable trial strategy, but the court concluded that if Boyer had investigated the content of the two witnesses' potential testimony, then Boyer's analysis of whether to call the witnesses would have been different.

Thus, considering only the evidence before the state habeas court,[4] the district court held the state court's judgment resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent under Title 28 U.S.C. § 2254(d)(1)." According to the highly deferential test articulated in *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011), the district court held there was "no reasonable argument that, based on the evidence presented [to the state habeas court], trial counsel satisfied *Strickland*'s demands."

The State timely appealed to this court, and the district court granted the State's motion for a stay pending this appeal.

## DISCUSSION

We review the district court's factual findings for clear error and its legal conclusions *de novo*. *Salts v. Epps*, 676 F.3d 468, 473 (5th Cir. 2012). We apply "the same standards to the state court's decision as did the district court." *Id.*

A federal court is limited in its ability to provide habeas relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the

---

[4] The district court expressly stated that it did not base its holding on any failure to interview Blake. We need not evaluate the evidence regarding Blake.

6

> merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). We must presume the state court's factual findings are correct, and the applicant bears the burden to rebut that presumption with clear and convincing evidence. § 2254(e)(1).

Criminal defendants have a right to effective assistance of counsel in state-court proceedings. *Strickland*, 466 U.S. at 684-86. To support a claim for ineffective assistance of counsel, the defendant must make two showings: (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Id.* at 687. A defendant may show counsel's assistance was deficient if the attorney failed to make a reasonable investigation into the case before trial. *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994). Counsel must, "at a minimum, . . . interview potential witnesses and . . . make an independent investigation of the facts and circumstances in the case." *Id.*

The district court stated that the state court's analysis of Kately's claim based on Boyer's investigation and interviewing of alibi witnesses was "terse at most." The district court concluded that the state court must have made an implicit finding that Boyer actually interviewed Jordan and Mitchell, because such a finding was necessary to the decision the state court reached, but that this implied finding was error inasmuch as "Jordan and Mitchell both testified that they did not speak to Boyer prior to the trial[, and] Boyer did not

unequivocally testify to the contrary." The district court granted relief, determining that the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). Both parties also construe the state court decision as containing an implicit finding that Boyer interviewed Jordan and Mitchell. We accept that construction and evaluate whether such a finding was unreasonable.

At the hearing before the state habeas court, Jordan testified he did not speak to an attorney before the trial. Mitchell said she did not know to whom she spoke until it was time for court, then stated she did not remember speaking to anybody, and later testified she spoke to an attorney at the trial. Attorney Boyer's testimony was somewhat ambiguous, but he explicitly stated that he investigated this case and interviewed these witnesses before trial. Further, the state habeas court had evidence of an alibi witness list, which was filed in the trial court before trial, that contained both Jordan's and Mitchell's names and addresses. In his opening statement at the murder trial, Boyer told jurors he would likely call both Jordan and Mitchell as witnesses and provided details of each witness's potential testimonies.

When the district court determined the evidence did not support that Boyer had interviewed certain witnesses, the court was reweighing the conflicting evidence. It should not have. A federal court is to presume a state habeas court's factual findings are correct absent clear and convincing evidence to the contrary. *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004). It is not enough that the federal court "would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010). There was evidence from Boyer himself that he interviewed the relevant witnesses. The evidence

was contradicted and was not as clearly stated as it could have been, but the state habeas court was entitled to credit it.  Based on these facts, we cannot say the state habeas court's finding was unreasonable.

A federal court also may grant habeas relief if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).  The relevant established law concerns ineffective assistance of counsel under *Strickland*.  "[A] defendant must meet the standard established in *Strickland* by showing that 'counsel's performance was deficient *and* that the deficiency prejudiced the defense.'" *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)) (emphasis added).

When we apply the standard in Section 2254(d)(1) to a claim for ineffective assistance of counsel, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 131 S. Ct. at 788.  The state habeas court's finding that Boyer interviewed  the alibi witnesses was not an unreasonable determination of the facts.  Therefore, it was error to conclude as the district court did that there was no reasonable argument that Boyer's performance was satisfactory.  *See Bryant*, 28 F.3d at 1415.  We thus do not need to reach the issue of prejudice.

We REVERSE the district court's judgment granting habeas relief.