United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 14, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

)))))))))))))))))))))))))))

No. 04-11188

)))))))))))))))))))))))))))

SCOTTY LAYNE HARRISON,

Petitioner-Appellant,

versus

NATHANIEL QUARTERMAN, Director, Texas Department of Criminal
Justice, Correctional Institutions Division,

Respondent-Appellee.

---

Appeal from the United States District Court
for the Northern District of Texas

---

Before DENNIS, CLEMENT, and PRADO, Circuit Judges.

PRADO, Circuit Judge:

On December 12, 2001, a Texas state jury found Petitioner-
Appellant Scotty Harrison ("Harrison") guilty of sexual assault.
Harrison received a mandatory life sentence because the jury also
determined that he had been previously convicted of sexual assault.
See TEX. PENAL CODE ANN. § 12.42(c)(2)(A)(i) and (B)(ii).  Harrison
unsuccessfully challenged his conviction in the state courts.
Having exhausted all avenues of relief in the state system, Harrison
filed a federal petition for a writ of habeas corpus under 28 U.S.C.
§ 2254, alleging ineffective assistance of counsel.  Harrison,
proceeding pro se, now appeals the order of the district court

denying his application for habeas relief.

## I. FACTUAL AND PROCEDURAL HISTORY

Harrison was convicted of sexual assault after a trial in which six witnesses testified--three appeared for the prosecution and three for the defense. The first witness to appear for the prosecution was Christina Jones ("Jones"), the victim of the sexual assualt. Jones testified that, prior to the sexual assault, she had been friends with Harrison for about five months, and that she had previously had sex with Harrison on one occasion while using drugs. On July 17, 2000, Harrison came to her apartment at about 9:00 or 10:00 p.m., told her that he had broken up with his girlfriend, and asked to take a shower. Jones told him that he could take a shower and that she was going to be on the couch because she was not feeling well due to the herniated disks in her neck and back.

Jones testified that she then fell asleep and that she woke up when Harrison sat at the end of the couch wearing only his boxer shorts. Next, she stated that Harrison engaged in forced sexual intercourse with her and that she heard something "pop" in her neck during the assault. After Harrison was finished, he put on his clothes and left. Due to her neck and back pain, Jones remained on the couch for several days until her stepfather came to her apartment and found her.

Jones further testified that she was in the hospital for approximately four months following the assault. Jones also stated

2

that, at the time of trial, she had not regained use of her legs and was living in a nursing home.

On cross-examination, Dennis Jones, Harrison's trial counsel,[1] challenged Jones's testimony. Trial counsel asked Jones whether she had consensual three-way sex with Harrison and another man, Tony West, on July 17, 2000. Jones responded that West was not at her apartment that night, and that she did not have consensual three-way sex with Harrison and West that night. Trial counsel then asked Jones whether she had told Patricia Herron ("Herron"), an acquaintance and Jones's drug supplier, that she had consensual three-way sex with Harrison and West which got rough and out-of-hand. Jones denied ever telling Herron about such an encounter, and she stated that she never had consensual three-way sex with Harrison and West.

The second witness to testify for the prosecution was Jodi Cotner, a nurse at Baylor University Medical Center. Cotner testified that Jones suffered from extreme dehydration, paralysis, and an infection when Jones was admitted to the intensive care unit on July 24, 2000. According to Cotner's testimony, a rape examination was performed, and the results were "pretty normal," except for some edema and swollen labia which Cotner believed were consistent with sexual assault. The examination did not reveal

---

[1] To avoid any confusion between Dennis Jones, Harrison's trial counsel, and Christina Jones, the victim of the sexual assault, this opinion shall refer to Dennis Jones as "trial counsel."

evidence of seminal fluid or spermatozoa, but Cotner stated that she was not surprised that semen was not found due to the passage of time between the rape and Jones's admission to the hospital.

Charles Weise, Jones's stepfather, was the final witness to appear for the prosecution. Weise testified that he went to Jones's apartment on July 24 because he became concerned when he had not heard from Jones for several days. Weise went to his daughter's apartment and discovered her lying on the couch. The prosecution rested its case after Weise's testimony.

Darlene Waddle was the first witness to appear on Harrison's behalf. Waddle had known Harrison for about ten years, and they had lived together for about five-and-a-half years beginning in 1991. Waddle related a conversation that she had with Jones in the summer of 2000 in which Jones stated that she was obsessed with Harrison. According to Waddle's testimony, Jones became angry and would not speak to her after Jones learned that she had lived with Harrison. On cross-examination, Waddle admitted to a prior felony conviction for possession of methamphetamine and a prior misdemeanor theft conviction.

Herron was the next witness to testify for the defense. She had known Harrison for about two or three years and had sold drugs to Jones. Herron testified that Jones told her that she severely injured her back while having rough three-way sex with Harrison and another man. Herron identified the other man as Brian Fincher. On cross-examination, Herron conceded that she did not know what

4

happened at Jones's apartment on July 17, 2000, and that she could not recall when the conversation with Jones took place.

At the time of the trial, Herron was in jail awaiting sentencing after having pled guilty to a federal drug conspiracy charge. Herron also admitted that there were pending state charges relating to possession with the intent to deliver methamphetamine.

Dana Hobbs was the final defense witness. She testified that she had known Harrison for about fourteen years. Hobbs stated that Jones worked at the Eight Liners Heaven game room in July of 2000. Hobbs testified about Jones's back condition prior to the assault. She stated that, although she had heard that Jones had a back injury, she had observed Jones cleaning up, doing odd jobs, and running errands. The defense rested after Hobbs's testimony.

The following day, the jury returned a verdict that Harrison was guilty of sexual assault. Harrison subsequently appealed to the Court of Appeals for the Tenth District of Texas, which affirmed his conviction. See Harrison v. State, No. 10-02-064-CR, slip op. (Tex. App. 2002) (unpublished). Harrison did not seek discretionary review from the Texas Court of Criminal Appeals. Harrison, proceeding pro se, submitted a state application for a writ of habeas corpus which alleged, among other claims, ineffective assistance of counsel. On February 4, 2004, the Texas Court of Criminal Appeals denied his application without a written order and without holding a hearing. See Ex parte Harrison, Application No. 57,647-01.

Finding no relief from his conviction for sexual assault in the Texas state courts, Harrison filed a federal petition for a writ of habeas corpus under 28 U.S.C. § 2254, again alleging ineffective assistance of counsel. On August 30, 2004, a magistrate judge issued a report recommending that the petition be denied. Over Harrison's objection to the report, the district court adopted the magistrate judge's findings and denied the petition. On January 9, 2006, this court granted a certificate of appealability on the ineffective assistance of counsel claim.

## II. STANDARD OF REVIEW

In a habeas appeal, this court reviews the district court's findings of fact for clear error and its conclusions of law de novo, applying the same standards to the state court's decision as did the district court. Coble v. Dretke, 444 F.3d 345, 349 (5th Cir. 2006).

Harrison filed his habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254; therefore, AEDPA governs this appeal. Lindh v. Murphy, 521 U.S. 320, 336 (1997). Under AEDPA, this court may not grant habeas relief on a claim that a state court has adjudicated on the merits "unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Riddle v. Cockrell, 288 F.3d 713, 716 (5th Cir. 2002) (quoting 28 U.S.C. § 2254(d)(1)-(2)) (internal quotation marks omitted). A state court's decision is

"contrary to" clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." Busby v. Dretke, 359 F.3d 708, 713 (5th Cir. 2004) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). A decision constitutes an "unreasonable application" of clearly established federal law if it is "objectively unreasonable." Pondexter v. Dretke, 346 F.3d 142, 146 (5th Cir. 2003). The decision of the state court might be incorrect, but still fall below the "objectively unreasonable" threshold. See Neal v. Puckett, 286 F.3d 230, 236 (5th Cir. 2002). This court must presume that a state court's findings of fact are correct, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

## III. DISCUSSION

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court articulated the standard for establishing an ineffective assistance of counsel claim. Harrison must demonstrate both that: (1) his counsel's performance was deficient; and (2) counsel's deficient performance prejudiced his defense. Id. at 687. Counsel's performance is deficient if it "fell below an objective standard of reasonableness." Id. at 688. Judicial scrutiny of counsel's performance must be "highly deferential." Id. at 689.

7

A reviewing court should make every effort "to eliminate the distorting effects of hindsight" and to "evaluate the conduct from counsel's perspective at the time." Id. Further, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91.

Harrison must demonstrate prejudice in addition to deficient performance. Deficient performance results in prejudice when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

1. Deficient Performance

Harrison alleges that trial counsel provided ineffective assistance by not interviewing West pretrial and by not calling West as a witness at trial.[2] Harrison avers that West would have testified that he, Harrison, and Jones had consensual three-way sex on July 17, 2000. According to Harrison, West made it known that he was readily available and willing to testify on behalf of Harrison. Harrison maintains that he advised trial counsel,

_____

[2] Harrison based his ineffective assistance of counsel claim on several grounds. The only issue on appeal is Harrison's contention that trial counsel provided ineffective assistance by failing to investigate West and have West testify at trial.

8

verbally and in writing, in October and November of 2000 to contact West.[3]  Harrison also contends that he told trial counsel how to contact West, for he informed trial counsel that West was incarcerated in the Dallas County jail.  Trial counsel, Harrison alleges, never interviewed West or issued a subpoena for West to appear at trial.

If Harrison's characterization of West's potential testimony is accurate and West was willing to so testify, then Harrison has a strong argument that trial counsel's failure to interview West, a potential eyewitness, and call him as a witness at trial fell below the standard of a reasonably competent attorney.  It is beyond cavil that "an attorney must engage in a reasonable amount of pretrial investigation and[,] at a minimum, interview potential witnesses and make an independent investigation of the facts and circumstances in the case."  Bryant v. Scott, 28 F.3d 1411, 1415 (5th Cir. 1994) (internal quotation marks and alterations omitted). In Bryant, this court held that trial counsel's "failure to interview eyewitnesses to the crime was constitutionally deficient representation."  Id. at 1418.  In this case, trial counsel's failure to interview West, a potential eyewitness, raises serious concerns about whether counsel provided constitutionally adequate representation.  See Soffar v. Dretke, 368 F.3d 441, 473-74 (5th

---

[3] Trial counsel would have had sufficient time to locate West, for the trial took place on December 10-12, 2001.

Cir. 2004) (holding that counsel's failure to interview the only known eyewitness to the crime charged amounted to deficient performance under Strickland); see also Anderson v. Johnson, 338 F.3d 382, 392 (5th Cir. 2003) (holding that counsel's failure to investigate an eyewitness constituted constitutionally deficient representation).

The district court reasoned, however, that Harrison could not satisfy Strickland's deficient performance prong because West's testimony, assuming that it would have been consistent with Harrison's representations, would have been cumulative of Herron's testimony. See United States v. Harris, 408 F.3d 186, 191 (5th Cir. 2005) ("This Court has previously refused to allow the omission of cumulative testimony to amount to ineffective assistance of counsel."). The district court also determined that trial counsel's failure to have West appear as a witness at trial may have been a strategic choice, for trial counsel "may well have determined that in light of all the credibility issues at play it would not have advanced the defense to have presented the testimony of a person then confined at the Dallas County Jail." See Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984) (observing the "strong presumption" that counsel's decision not to call a witness is strategic); see also Martinez v. Quarterman, 481 F.3d 249, 257 (5th Cir. 2007) (noting that counsel's strategic choices are entitled to deference).

Contrary to the district court's conclusion, West's potential

10

testimony would not have been cumulative of Herron's testimony. The defense's theory was that Jones injured her back while having consensual, albeit rough, three-way sex with Harrison and West on July 17, 2000. The defense called Herron in an attempt to impeach Jones's testimony in which she stated that she never told Herron that she had three-way sex with Harrison and West. Herron testified that Jones told her that Jones had rough three-way sex with Harrison and Brian Fincher. Herron could not recall when the conversation took place and she conceded that she had no idea what happened at Jones's apartment on the night of July 17, 2000.

Admittedly, there is some overlap between Herron's testimony and West's proposed testimony, but Herron's impeachment testimony is no substitute for West's proposed eyewitness testimony. Herron could not corroborate the defense's theory that West was the other man, for she identified Fincher as the third participant. Furthermore, Herron's testimony suggested that the three-way sex may not have been consensual.[4] Another important difference between Herron's testimony and West's proposed testimony is that Herron, unlike West, could not testify that Jones and Harrison had consensual sex *on the night of July 17, 2000*. West's proposed testimony cannot be dismissed as cumulative because the difference

---

[4] Herron testified that Jones said she, "did some drugs and had a threesome and it got out of control and . . . that *she had asked it to stop but it didn't stop and that she snapped her spinal cord*." (emphasis added).

11

between his testimony and Herron's testimony goes to the heart of whether a sexual assault occurred on July 17, 2000, as the state charged. See Washington v. Smith, 219 F.3d 620, 633-34 (7th Cir. 2000) (holding that additional alibi witness testimony was not cumulative where the alibi witness who did testify had *no direct knowledge of the defendant's whereabouts at the time of the robbery*); see also Stewart v. Wolfenbarger, 468 F.3d 338, 359 (6th Cir. 2007) (finding additional alibi testimony was not cumulative where it "would have added a great deal of substance and credibility" to the defendant's alibi defense).

We are equally unpersuaded by the district court's reasoning that trial counsel made a strategic choice by not calling West as a witness at trial. First, Strickland counsels that "strategic choices made after *thorough investigation* of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91 (emphasis added). In Anderson, we acknowledged that "a lack of credibility might support a strategic decision not to call a witness to *testify*," but we also explained that "a witness's character flaws cannot support a failure to *investigate*." 338 F.3d at 392. If counsel does not speak to a witness, then counsel "is ill-equipped to assess his credibility or persuasiveness as a witness." Id.; see

12

also <u>Griffin v. Warden</u>, 970 F.2d 1355, 1358 (4th Cir. 1992) (holding that counsel did not make a strategic choice not to call a witness when counsel did not talk to that witness).  In this case, Harrison alleges that trial counsel did not interview West.  If this allegation is true, then, under <u>Anderson</u>, trial counsel did not make a strategic choice when he did not call West to testify at trial.

Second, the district court's supposition that trial counsel did not have West testify at trial because trial counsel "may well have determined that in light of all the credibility issues at play it would not have advanced the defense to have presented the testimony of a person then confined at the Dallas County Jail" is speculation unsupported by the record.  Trial counsel called two witnesses with blemished criminal records during the trial.  Waddle had a prior felony conviction for possession of methamphetamine and a prior misdemeanor theft conviction, and Herron was awaiting sentencing after having pled guilty to federal drug conspiracy charges.[5]  Given the fact that trial counsel called two witnesses with criminal histories, one of whom was in jail awaiting sentencing, the district court erred in speculating that trial counsel excluded West from the witness stand because he was incarcerated in the Dallas County jail.

---

[5] We recognize that in some cases counsel may have strategic reasons to differentiate between criminal convictions.  For example, if West had been in jail for sexual assualt, trial counsel would have had a strategic reason for not calling him as a defense witness in Harrison's sexual assault trial.  In this case, Harrison alleges that trial counsel did not interview West, and the record does not disclose whether trial counsel knew why West was incarcerated in the Dallas County jail.

13

If Harrison's allegations are true, then he has a strong argument that, under Strickland and its progeny, trial counsel's performance fell below the standard of a reasonably competent attorney. See Soffar, 368 F.3d at 473-74; Anderson, 338 F.3d at 392; Bryant, 28 F.3d at 1418.

2.  Prejudice

To prevail on an ineffective assistance of counsel claim, Harrison must also demonstrate that trial counsel's deficient performance prejudiced his defense. Strickland's prejudice element requires Harrison to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also Soffar, 368 F.3d at 478 (noting that "reasonable probability need not be proof by a preponderance that the result would have been different").

Assuming Harrison's allegations are true, he has a strong argument that trial counsel's failure to interview West and have West testify at trial prejudiced his defense. Though there was some physical evidence indicating that Jones had been sexually assaulted, the prosecution and trial counsel acknowledged that the case turned on witness testimony. Indeed, during closing argument, trial counsel stressed that "the main issue in this case is to judge the credibility of the witnesses." Trial counsel also reiterated the defense's theory-of-the-case, namely, that Jones had consensual

14

three-way sex with Harrison and another man.  During the closing argument, trial counsel did not identify the other man as West, as he had done during his cross-examination of Jones.

Trial counsel's decision not to interview West and not to have him testify undermined Harrison's defense.  The jury heard that Jones had consensual three-way sex with Harrison and West.  Trial counsel's failure to have West testify allowed the jury to draw a negative inference against Harrison's defense based on West's absence.  Indeed, during the prosecution's rebuttal to trial counsel's closing argument, the prosecution argued:

> If there was three-way sex, you can bet your life Tony West would have been here because that is who they believe.  That is their story, remember? . . . Where is Tony West? . . . Where is Tony West?  Where is Tony West to corroborate their story?  Can't do it.  Can't corroborate it.

Our sister circuits have held that counsel prejudices his client's defense when counsel fails to call a witness who is central to establishing the defense's theory-of-the-case, and the jury is thereby allowed to draw a negative inference from that witness's absence.  Stewart, 468 F.3d at 360; Washington, 219 F.3d at 634.  We agree.  Given the role that credibility and witness testimony played in this case, there exists a "reasonable probability" that, but for counsel's errors, the jury might have reached a different verdict.  See Anderson, 338 F.3d at 393-94 (holding that counsel's failure to have the only known exculpatory eyewitness testify satisfied Strickland's prejudice requirement).

15

### 3. Record Needs Further Development

Though the district court erroneously applied Strickland and its progeny, we are not in a position to grant Harrison's petition for a writ of habeas corpus. In United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983), we observed that "complaints of uncalled witnesses are not favored . . . ." Therefore, when "the only evidence of a missing witnesses'[sic] testimony is from the defendant, this Court views the claims of ineffective assistance with great caution." Sayre v. Anderson, 238 F.3d 631, 636 (5th Cir. 2001). Ordinarily, a defendant's failure to present some evidence *from the uncalled witness* regarding that witness's potential testimony and willingness to testify would be fatal to an ineffective assistance of counsel claim. Id.; see also Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985).

In this case, the only evidence of what West would have testified to comes from Harrison. Furthermore, Harrison has not provided an affidavit from West indicating that West would have been willing to testify at Harrison's trial. Harrison contends that his failure to present either the state courts or the district court with an affidavit from West should not defeat his ineffective assistance of counsel claim because the Texas Department of Criminal Justice ("TDCJ") has prevented him from corresponding with West, who is also incarcerated in the Texas prison system. Harrison urges this court to appoint him an attorney to interview West and obtain

the necessary affidavit or to order the TDCJ to allow him to write to West. Citing to <u>Williams v. Taylor</u>, 529 U.S. 420 (2000), Respondent-Appellee Nathaniel Quarterman ("Quarterman" or "the Director") argues that Harrison is now barred from producing an affidavit from West because Harrison never presented such an affidavit to the state courts.

We disagree with Quarterman's contention that <u>Williams</u> bars Harrison from now obtaining West's affidavit. In <u>Williams</u>, the Supreme Court addressed the proper construction of 28 U.S.C. § 2254(e)(2), which places restrictions on the availability of a federal evidentiary hearing when the habeas applicant has failed to develop the factual basis of a claim in state court. 529 U.S. at 424. The <u>Williams</u> court makes it clear that § 2254(e)(2) is not operative unless the "failure to develop the factual basis of a claim" is due to a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." <u>Id.</u> at 432. If the TDCJ has prevented Harrison from corresponding with West, then Harrison's failure to obtain an affidavit from West is not attributable to him and § 2254(e)(2) does not apply in this case.

Quarterman makes much of the facts that: (1) Harrison only attempted to correspond with West ten months after his conviction became final and one month after he filed his state habeas corpus application; and (2) Harrison did not attempt to obtain West's

17

affidavit prior to his transfer to the Director's custody. These facts do not demonstrate that Harrison did not diligently attempt to develop the factual basis of his ineffective assistance of counsel claim in state court. The record discloses that Harrison filed his state habeas petition on September 11, 2003, and that he attempted to correspond with West on October 13, 2003. Harrison therefore attempted to contact West while his state habeas petition was still pending, for the Texas Court of Criminal Appeals did not deny his application until February 4, 2004. Harrison's actions are therefore unlike those of the habeas petitioner in Williams who first mentioned an important psychiatric report in his federal habeas petition. 529 U.S. at 437-38. Quarterman apparently wants this court to read § 2254(e)(2)'s diligence requirement as mandating that a habeas petitioner act "as soon as possible," but that is not the law. See id. at 435 ("Diligence for purposes of the opening clause [of § 2254(e)(2)] depends upon whether the prisoner made a *reasonable attempt*, in light of the information available at the time, to investigate and pursue claims in state court . . . .") (emphasis added).[6]

Quarterman does, however, advance a potentially meritorious

_____

[6] The Williams court also stated, "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." 529 U.S. at 437. In this case, Harrison requested an evidentiary hearing in his November 20, 2003 objection to the state's response to his habeas petition. The Texas Court of Criminal Appeals did not grant Harrison's request for an evidentiary hearing.

18

argument regarding whether Harrison exercised due diligence in developing the factual basis of his ineffective assistance claim in the state courts. Quarterman contends that Harrison has not shown that he followed the TDCJ's two-step grievance procedure for challenging a denial of permission to correspond with West. If Harrison did not follow or exhaust the TDCJ's grievance procedure, then arguably he is at fault for not obtaining West's affidavit and § 2254(e)(2) applies. The district court did not address this issue, and we decline to do so in the first instance.

As the unresolved issue regarding whether Harrison followed the two-step grievance procedure suggests, the record needs further development before we may determine if the Texas Court of Criminal Appeals's denial of habeas was an "unreasonable application" of Strickland. The district court assumed Harrison's allegations were true, and erroneously applied Strickland to those presumed facts. We therefore VACATE the portion of the district court's judgment that addresses Harrison's ineffective assistance of counsel claim based on the failure of trial counsel to interview West and to have West testify at trial. We REMAND Harrison's ineffective assistance of counsel claim to the district court for further development of the record.

On remand, the district court should resolve whether Harrison followed the two-step grievance procedure. If the TDCJ has prevented Harrison from contacting West even though Harrison has followed all procedures for corresponding with another inmate, then

19

the district court should allow Harrison to obtain West's affidavit. Additionally, the district court should determine the extent to which trial counsel attempted to contact or interview West, for trial counsel's affidavit does not mention whether he attempted to interview West or why he decided against having West testify at trial. After developing the record, the district court should reconsider Harrison's ineffective assistance of counsel claim in light of the new evidence, if any.

## IV. CONCLUSION

For the reasons stated above, we VACATE the district court's denial of habeas on Harrison's ineffective assistance of counsel claim based on trial counsel's failure to interview West and call West as a witness at trial, and REMAND for proceedings consistent with this opinion.

VACATED and REMANDED.