WILLIAMS, J.
hThe defendant, Kenneth Lennell Joshua, was charged by bill of information with aggravated battery with a firearm, in violation of LSA-R.S. 14:34. He was found guilty as charged. After adjudicating the defendant a third-felony habitual offender, the tidal court sentenced him to life imprisonment without the benefit of probation, parole or suspension of sentence. On appeal, this Court affirmed the defendant’s conviction and sentence. However, we deferred the defendant’s claim of ineffective *287 assistance of counsel to post-conviction relief (“PCR”) to allow for an evidentiary hearing. State v. Joshua, 42,766 (La.App.2d Cir.1/9/08), 973 So.2d 963, writ denied, 2008-0358 (La.9/19/08), 992 So.2d 951.
Thereafter, the trial court denied the defendant’s PCR application. Following the denial of his motion, the ■ defendant applied to this court for a supervisory writ. We granted a writ of certiorari, and docketed this matter for review arid disposition by opinion. For the following reasons, we hereby grant the defendant’s PCR application and make it peremptory. We vacate the defendant’s conviction and sentence and remand this matter for further proceedings.
FACTS
On February 3, 2004, Vincent Shine was shot in the leg as he was standing on a street corner in Shreveport.[1] At the time of the shooting, Shine was standing in front of a house talking to a woman he identified as “Rita.” |2When questioned by police officers, Shine identified his assailant as the defendant, Kenneth Joshua,.
During his interrogation, the defendant admitted that he was present at the scene of the shooting. However, he denied shooting Shine. • Initially, the defendant stated that- he did not see the shooter. Thereafter, he admitted that he saw' the shooter,: but he refused to identify him. Additionally, the defendant provided the investigating officers with the names of three eyewitnesses, Rita Reliford, “Jeff’ and “Duke.” The defendant informed the officers that those. witnesses could verify that he did not shoot the victim. On February 23, 2004, the defendant was arrested and charged with aggravated battery with a firearm, in violation of LSA-R.S. 14:34.
Detective Russell Ross, of the Shreveport Police Department, testified at trial. Det. Ross stated .that .patrol officers who responded to the shooting advised him that they had canvassed the neighborhood on the night of the shooting and were, unable to locate any. witnesses. Det, Ross also testified that, other than the shell casings, the officers did not recover any evidence from the scene of the shooting. Det. Russell further testified that he was unsuccessful in his attempts to locate “Rita Reli-ford.” The detective did not state whether he attempted to locate the other witnesses named by the defendant.
The victim, Vincent Shine, testified as follows: he had known the defendant for “some years”; he had engaged in “some kind of scuffle” with the defendant in the past; he was standing in front of a house talking to Rita; the defendant came out of the house demanding to know why he was talking to Rita; he and the defendant had a verbal altercation; thereafter, the 1 .¡defendant pulled out a black handgun and fired at him “at least five” times from “point blank” range; and, he was shot in the leg once.
The defendant also testified at the trial. He stated that he saw Shine talking to Rita and he told .Shine to leave. The defendant stated that- a man called “Lil Duke” shot Shine because Shine had failed to pay money that he owed Lil Duke for drugs.
A six-person jury unanimously found the defendant guilty as charged. After being adjudicated a third-felony habitual offender, the defendant was sentenced to life *288 imprisonment, without the benefit of probation, parole, or suspension of sentence.
On appeal, the defendant asserted a pro se assignment of error, arguing that he was denied effective assistance of counsel. He argued that his trial attorney failed to investigate and attempt to interview the eyewitnesses to the shooting, including the person that both he and the victim had identified as “Rita.” The defendant asserted that he had provided his attorney with a list of names and addresses of witnesses, and on the day of trial, he learned that his attorney had not contacted any of the witnesses about his case. This Court found that the appellate record did not contain sufficient information for review and deferred the ineffective assistance of counsel claim to PCR to allow for an evidentiary hearing. State v. Joshua, supra.
On September 24, 2009, the defendant filed a PCR claim of ineffective assistance of counsel. He argued that his court: appointed trial counsel had failed to investigate or contact the witnesses who could have | testified that he was not the shooter.[2] According to the defendant, he was prejudiced in the following regards: the jury did not hear the testimony of the eyewitnesses; the prosecutor used the absence of defense witnesses against him during closing arguments; the absence of the eyewitnesses forced him to testify, in his own defense, in an effort to controvert the victim’s testimony; and, being forced to.testify enabled the state to question him about his prior convictions.[3] Moreover, the defendant argued that his ^attorney failed to move for a mistrial, as mandated under LSA-C.Cr.P. art. 770, when the prosecutor falsely asserted, during cross-examination, that the defendant had “pled *289 guilty to aggravated arson[.]”[4] Further, the defendant listed the names of five persons who could have corroborated his testimony that he did not shoot Shine. He provided the following names: Cearita “Rita” Reliford Pendleton, Lenar Johnson, Larry Wilson, Gwen Banks and Billy Frank.
|fiOn January 10, 2010, the trial court signed the order setting this matter for an evidentiary hearing as ordered by this Court. Subsequently, investigators located “Rita,” who, at that time, was incarcerated in New Jersey; her expected release date was March 80, 2012. Consequently, the deposition of Rita was obtained on September 1, 2010.
In her deposition, Cearita “Rita” Reli-ford Pendleton testified as follows: in 2004, she used the name “Grita” Reliford; she lived in Shreveport on West College Street with her aunt, Ada Mae Smith; she knew both Shine and the defendant; she and Shine were romantically involved and frequently “got high” together; the defendant would come to her aunt’s house with her cousin, Willie Smith; on the night of the shooting, Shine purchased some crack cocaine from a dealer known as “Lil Duke”; Shine purchased the drugs on credit and promised, to pay the dealer at a later date; after she and Shine smoked the crack cocaine, they began to argue outside of Billy Franks’ house; the- defendant came outside and told Shine to leave; Lil Duke approached Shine and demanded his money for the drugs; Shine told Lil Duke that he did not have any money; Lil Duke pulled a gun, aimed it at Shine and fired multiple shots; Lil Duke shot Shine in the leg; she and other bystanders fled the scene; Willie Smith and a girl called “Niesi” were at the house; she did not know whether Willie Smith or Niesi saw the shooting; she did not remain at the scene to talk to the police officers because she had been drinking alcohol and smoking crack cocaine; Shine and the defendant had been friends; she did not think Shine and the defendant had any problems -with each other; she did not know much about Lil Duke, other than he was a member of a gang known as “the Bloods”; the defendant did not have a gun that night; she had never seen the defendant with a gun; she lived 17with her aunt for approximately one year after the shooting and was never contacted by the police department or by the defendant’s trial attorney; she was still living in Shreveport in May 2005, when the defendant’s trial was held; she would have testified that the defendant did not shoot Shine had she been asked to do *290 so; and, she did not learn that the defendant had been arrested for shooting Shine until after she moved to New Jersey.
An evidentiary hearing was set for March 1, 2011, during which Rita’s deposition transcript was to be admitted and the other witnesses who had been named by the defendant were scheduled to testify. However, on February 17, 2011, Judge Roy Brun issued an opinion denying the defendant’s claim., of ineffective assistance of counsel without the benefit of a hearing.[5] Thereafter, Judge Brun’s ruling was vacated, and after a series of continuances, the evidentiary hearing was reset for January 9,. 2013. The hearing was held as scheduled. During the hearing, the state objected to the admission of Rita’s deposition, arguing that she was no longer incarcerated and the defendant had failed to establish that she was unavailable to testify. The trial court sustained the objection but granted the defendant additional time to' locate Rita,
Rita’s cousin, Willie Smith, testified at the hearing. He testified as follows: he knew both Shine and the defendant; on the night of the shooting, he and the defendant were inside the house when Shine came by and asked for Rita; Shine and Rita went outside; soon thereafter, he heard Rita calling for him (Smith); he and the defendant went outside; he told Rita to come [ ¡¡back inside; after Shine walked away, he heard a gunshot; he did not see who fired the gun; the defendant was standing next to him when the gun was fired; the defendant did not have a gun; the defendant did not shoot Shine; he heard only one shot, not five or six shots; he immediately left the scene because he Was on probation at that time; the police department did not contact him to provide a statement; it is possible that he was in jail when the police officers were investigating the case; the defendant’s trial counsel did not contact him; the defendant’s appellate counsel was the first person who contacted him about the case; if he had been contacted prior to the defendant’s trial, he would have testified that the defendant did not shoot Shine; it was “a long time” before he learned that the defendant had been arrested for shooting Shine;, on the night of the shooting, he and others were drinking alcohol; and, Rita and others were smoking crack cocaine.
LaTonya Dean, the defendant’s sister, also testified. She stated that after the defendant was arrested, she attempted to locate Rita Reliford. She discovered through Rita’s father that Rita had been in jail in New Jersey, and Rita was contacted for her deposition. Dean testified that she did not know Rita’s whereabouts at the time of the evidentiary hearing in 2013, and she had lost the contact information for Rita’s father. She testified that “Jeff,” one of the eyewitnesses the defendant had mentioned, had died. Dean further testified that her attempts to locate Rita through her son were unsuccessful.
Also during the hearing, the defendant’s court-appointed trial attorney, Jerry Kir-cus, testified as follows: he did not remember representing the defendant; he did not have any recollection of the defendant’s trial or of any investigation regarding the case; and, he did not | flhave any documentation relating to the case. Kircus also testified with regard to his practice in criminal cases. He stated that whenever a defendant provided him with a name and address of a witness or a witness was listed on the police report, it was his prac *291 tice to give the information to the investigators in the public defender’s office. The investigators would then contact the witness, . solicit a statement from him or her, and obtain the witness’ address so that a subpoena could be issued.
Alan Golden, a Caddo Parish public defender, also testified. Specifically, he testified with regard to circumstances in which the victim and the accused both mentioned an eyewitness and the accused asserts that he or she is innocent and identifies someone else as the shooter. According to Golden, office protocol mandated that the assigned public defender request an investigation of any potential witnesses. He stated that eyewitnesses would be essential and it would be imperative to interview them. Golden also testified that an investigation would be required in the following circumstances: (1) when the client disputes a material fact; and (2) when the client provides information that raises a possible defense. Further, Golden testified that the request for an investigation was required to be in writing and submitted to the chief investigator.
Moreover, Golden testified that a review of the public defender’s office records showed that Kircus did not request any investigation in the defendant’s case, or in any of the cases he was assigned in 2005. Further, Golden testified that all public defenders were expected to review the criminal records of their clients, and. to object and move for a mistrial if, during the trial, the prosecutor alleged the defendant was charged with and/or convicted of a crime that records showed was not true. Golden stated | inthe failure to object would be an error and would not be considered as part of any trial strategy. However, Golden did not provide an.opinion as to whether Kircus’ failure to object to the prosecutor’s statement would have changed the outcome of the case.
Letters produced by Roger Swan and Jim McClure, investigators with the public defender’s office, were introduced into evidence. The letters confirmed that the investigators’ search of the public defender’s office records indicated that Kircus never submitted the required written request for an investigation in the defendant’s case.
Sandra Williams, one of the defendant’s appellate attorneys, testified. She stated that she and an assistant district attorney obtained Rita’s deposition over the telephone. Williams also testified that she had been unsuccessful in her attempts to locate Rita to have her testify at the evi-dentiary hearing. She stated that prior to the hearing, she sent a letter to the address of the halfway house where Rita last lived. In the letter, she asked Rita to contact her about the case. She stated that the letter was signed as received while Rita was still living at the halfway house. However, Rita never contacted her. Williams also testified that she did not have any evidence to indicate that Rita had returned to Louisiana. Further, Williams testified that she did not know Rita’s whereabouts and she had not requested that a subpoena be issued to secure Rita’s presence.
The defense attempted to introduce Rita’s deposition into evidence. The state objected, arguing that the defense had not proven that Rita was unavailable. The trial court granted a, recess to give the defense an opportunity to hire an investigator to locate Rita. The court also allowed the defense to proffer Rita’s deposition.
InThe -hearing reconvened on February 19, 2013. The defendant testified as follows: he informed Kircus there were eyewitnesses to the shooting; he gave Kircus the names of Rita Reliford, “Jeff,” “Lil Buck,” and Willie Smith, and told him (Kircus) that the witnesses could be found *292 in the area where the shooting occurred; he told Det. Ross the names of Rita Reli-ford and Jeff; he believed the witnesses, whose names he had provided, were going to testify at his trial; when he discovered there were no defense witnesses, he felt compelled to testify so the jury would hear his version óf the events and not just the victim’s version; and, he has never been charged with arson or aggravated arson.
A subsequent hearing was held on May 6, 2013, The defense offered into evidence a certified copy of the minutes for the defendant’s prior conviction showing that he was convicted of placement of combustible materials, not arson. David Shanks, a private investigator, testified at the hearing with regard to his attempts to locate Rita. Shanks testified as follows: Rita had been released from incarceration in New Jersey in June 2012, but was rearrested in August. 2012 and November 2012, in New Jersey; Rita had married, but her husband died in 2012; a search of known addresses led him back to . the home of Rita’s aunt on West College Street in Shreveport; Rita’s family informed him that they had not been in touch with her since 2006; a relative named Eva Reliford informed him that Rita was in New Jersey; and, he concluded that Rita was somewhere in New Jersey.
Rita’s father, J.A. Reliford, testified that Rita had been living in New Jersey for approximately 12 years. He stated that Rita was not incarcerated and he had spoken to her the Friday before the May 2013 hearing. According to Reliford, Rita was unable to return to Shreveport to testify. He [12also testified that he did not have Rita’s address in New Jersey; however, he stated that he had three telephone numbers for her. 'Further, he stated that he did not know whether defense counsel had obtained any of Rita’s telephone numbers.
Sandra Williams again testified with regard to her attempts to locate Rita. Williams testified that she had attempted to contact Rita, using the three telephone numbers that Rita’s father had provided. According to Williams, the first number was disconnected three days after she first called it. When she called the second number, a man answered, stated that he was Rita’s friend and that he would have Rita return the phone call. Williams also testified that the man later confirmed that he gave Rita the message. She stated that the man gave her another number to call, but the woman who answered told her that she had the wrong number. Further, Williams testified that she sent a certified letter to a previous Arkansas address for Rita, but did not receive a response. Further, she stated that she left messages for Rita, informing her that the defense would pay the expenses for her to come and testify. However, all attempts to locate Rita were unsuccessful.
Judge Bleich allowed Rita’s deposition to be proffered and allowed the parties time to submit additional written arguments. The defendant argued that counsel has a duty to make reasonable investigations or make a reasonable decision that investigation is unnecessary, but that at a minimum, counsel must interview potential witnesses and make an independent investigation of the facts and circumstances of the case. The defendant cited two federal cases wherein the court held that counsel’s complete failure to investigate eyewitnesses fell below the standard of a reasonably competent | ^attorney practicing under prevailing professional norms and was constitutionally deficient representation. Harrison v. Quarterman, 496 F.3d 419 (5th Cir.2007); Bryant v. Scott, 28 F.3d 1411 (5th Cir.1994). The defendant argued that Rita and Smith did not want to talk to the police that night because they had been smoking crack coeaine and they *293 did not call police because they did not know the defendant had been charged with shooting Shine until much later.
Further, the defendant argued that Rita’s testimony was relevant and that her deposition was admissible under LSA-C.Cr.P. art. 930(B), which allows depositions to be admitted at PCR evidentiary hearings, where evidentiary rules governing trials need not be followed, citing State v. Whitley, 602 So.2d 721 (La.1992). The judge, as fact-finder in the PCR process, has a paramount concern to search for the truth, so all reliable evidence tending to establish the relevant facts should be considered and hearsay objections considered as affecting the weight of the evidence. Id.
In opposition, the state argued as follows: the defendant failed to establish credible evidence in support of his claim; the defendant did not “try hard enough” to locate Rita; the defendant failed to produce an affidavit or testimony by one of the trial jurors that Rita’s and Smith’s testimony would have made any difference in the verdict; the defendant did not prove that Lil Duke was the shooter; and, the defense attorney did not have anything “to work with” because law enforcement officers were unable to locate any witnesses.
On June 5, 2015, the trial court issued a written judgment denying the defendant’s application for PCR. The court found that the defendant failed to demonstrate that there was newly discovered evidence. The court also | uconcluded that the defendant failed to prove that his trial counsel’s failure to present testimony by Rita Reliford or other witnesses would have resulted in a different verdict. Further, the court found that the defendant did not demonstrate that his attorney made errors so serious as to render his performance constitutionally deficient. The court noted that had trial counsel been aware of Rita’s record and her “patent credibility issue,” he may have concluded that it would be error to call her as a witness. The court determined that the defendant failed to overcome the presumption that his attorney exercised reasonable judgment.
The deféndant now seeks review of that ruling.
DISCUSSION
The defendant contends the trial court erred in sustaining the state’s objection to the admission of Rita’s deposition on grounds that he had failed to prove that Rita was unavailable. He argues that the deposition was admissible pursuant to LSA-C.Cr.P. art. 930(B), which allows depositions to be admitted at PCR evidentia-ry hearings. The defendant also argues that Rita’s deposition was admissible under an exception to the hearsay rule set forth in LSA-C.E. art. 804,. which applies when a declarant is unavailable to appear and testify. The defendant maintains that Rita was incarcerated when the first evi-dentiary hearing was held, and she could not be located by the time the second hearing was held.
A petitioner who claims a violation of federal or state constitutional rights on post-conviction relief bears the burden to prove that he is entitled to the post-conviction relief sought. LSA-C.Cr.P. arts. 930.2 and 930.3. A claim of ineffective assistance of counsel is sometimes more properly raised in an application for post-conviction relief than on appeal because LSA-11fiC.Cr.P. art. 930 provides for the opportunity for an evidentiary hearing. State v. Carter, 2010-0614 (La. 1/24/12), 84 So.3d 499, cert denied, — U.S. —, 133 S.Ct. 209, 184 L.Ed.2d 40 (2012); State v. Ellis, 42,520 (La.App.2d Cir.9/26/07), 966 So.2d 139, writ denied, 2007-2190 (La.4/4/08), 978 So.2d 325.
*294 In post-conviction relief proceedings, an evidentiary hearing is allowed, in which testimony and other evidence may be received to resolve factual questions that are of significance to the outcome, and “duly authenticated records, transcripts, depositions, documents, or portions thereof, or admissions of facts may be received in evidence.” LSA-C.Cr.P. art. 930. The credibility of witnesses cannot generally be resolved on a “cold record.” State ex rel. Tassin v. Whitley, 602 So.2d 721 (La.1992). An evidentiary hearing will be necessary to resolve disputes over contested facts where real credibility issues are presented. Id. The proper method to dispose of a genuine and. material factual dispute is by evidentiary hearing where witnesses testify before the district court subject to cross-examination. Id. In State ex rel. Tassin v. Whitley, supra, the Court stated:
Evidentiary rules governing the trial on the question of guilt or innocence need not be followed at the hearing, Louisiana Code of Criminal Procedure article 930B specifically recognizes admissibility of various properly authenticated documents, such as records, transcripts, depositions and admissions of fact. Since the search for truth is the district court’s paramount concern, all reliable evidence tending to establish the relevant facts should be considered. With the judge as fact-finder in this hearing, objections on traditional hearsay grounds generally can be considered as affecting the weight rather than the admissibility of the evidence.
|1flM at 724 (emphasis added).
A declarant is unavailable as a witness when the declarant cannot or- will not appear in court, including when the declarant is absent and the offering party has been unable to secure his attendance by process or other reasonable means. LSA-C.E. art. 804. When the witness is unavailable, the hearsay rule does not exclude former testimony given in a prior proceeding where the other party had the opportunity to cross examine the witness. Id.
Our review of the record reveals that Rita’s deposition provided relevant information that was crucial to an essential issue in the state’s case—the identity of the shooter. Rita’s testimony constituted exculpatory evidence that corroborated the defendant’s testimony and contradicted the testimony of the victim. The record also reveals that the trial attorney failed to attempt to locate, interview or call Rita as a witness at trial. Therefore, the defendant was deprived of the opportunity to present exculpatory evidence during his trial.
After reviewing the record and relevant codal provisions, we find that Rita was unavailable as a. witness. Pursuant to LSA-C.Cr.P. art. 930 and LSA-C.E. art. 804, we find that the trial court erred in failing to admit Rita’s deposition into evidence.
The defendant also contends the trial court erred in finding that he failed to meet his burden of showing ineffective assistance of counsel. He’ argues that the evidence established that his trial counsel failed to request an investigation and failed to interview the eyewitnesses to the shooting. The defendant also argues that this failure could not have been a strategic decision because the trial attorney did not gather any information to determine whether the witnesses were available, what type of information |17they might have been able-to provide or their credibility, Further, the defendant argues that the trial attorney failed in his duty to. conduct a reasonable investigation. According to the defendant, even the trial attorney’s supervisor testified that the attorney failed to follow standard office policies which re *295 quired him to conduct an investigation in circumstances such as these.
Moreover, the defendant argues that he was prejudiced by the trial attorney’s failures. He asserts that the exculpatory statements provided by Rita and Smith supported his theory of defense, and there is a reasonable probability that the trial would have had a different result if the jurors would have been given the opportunity to hear the statements and weigh the credibility of the eyewitnesses.
The state does not oppose the defendant’s argument. The state concedes that the testimony of Rita and Smith corroborates the defendant’s testimony and provides exculpatory evidence in favor of the defendant and in contravention to the victim’s testimony. According to the state, the record supports a finding that the defendant’s trial attorney failed to investigate the case or attempt to locate the witnesses identified in the police report. Further, the state acknowledges that the trial attorney’s failure to investigate constituted a violation of the standard operating procedures and policies of the public defender’s office and precludes the court from concluding that the attorney’s actions were reasonable tactical decisions or trial strategy. The state further concedes that the attorney’s failure to investigate constituted ineffective assistance of counsel and deprived the defendant of the opportunity to present defense witnesses who could have exculpated the | isdefendant. Moreover, the state asserts that it cannot, in good faith, claim that the defendant received effective assistance of counsel.[6]
The Sixth and Fourteenth Amendments to the United States Constitution guarantee accused persons the right to effective assistance of counsel in a criminal prosecution. State v. Thomas, 2012-1410 (La.9/4/13), 124 So.3d 1049. The Sixth Amendment right to counsel protects the fundamental right to a fair trial. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Nix v. Whiteside, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986).
Claims of ineffective assistance of counsel are governed by the standard set forth by the United States Supreme Court in Strickland v. Washington, supra, and adopted by the Louisiana Supreme Court in State v, Washington, 491 So.2d 1337 (La.1986). When a convicted defendant complains ’ of the ineffectiveness of counsel’s assistance, the defendant must show (1) that counsel’s representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, supra-, State v. Washington, supra. A reviewing court must give great deference to trial counsel’s , judgment, tactical decisions and trial strategy, strongly presuming he has exercised reasonable professional judgment. State v. Grant, 41,745 (La.App.2d Cir. 4/4/07), 954 So.2d 823, writ denied, 2007-1193 (La.12/7/07), 969 So.2d 629; State v. Moore, 575 So.2d 928 (La.App. 2d Cir.1991).
In the instant case, as stated above, the defendant cited Bryant v. Scott, supra,[7] in *296 support of his argument that his trial counsel’s performance fell below the standard of effective assistance of counsel. In that case, the defendant argued that his trial counsel was ineffective for failing to investigate and interview potential eyewitnesses. The federal court of appeal agreed, stating:
[W]e find that [the attorney’s] failure to interview eyewitnesses to the crime was constitutionally deficient representation. There were two eyewitnesses to the armed robbery[.] One was Cindy Carpenter, the branch manager of the credit union, who identified the defendant as the individual who shot her in the commission of the robbery. The other was Ronnie Berkins, who walked into the credit union as [the defendant] was making his getaway. [The attorney] did not interview either Carpenter or Berkins and restricted his pretrial investigation to discussions with [the defendant], review of the indictment against [the defendant], and examination of the prosecutor’s file.
[The attorney] should have interviewed the eyewitnesses. Because there was no physical evidence connecting [the defendant] with the crime, the ■ eyewitness identification of [the defendant] at the crime scene was the cornerstone of the state’s case in chief. Consequently, information relevant to [the defendant’s] defense might have been obtained through better pretrial investigation of the eyewitnesses, and a reasonable lawyer would have made some effort to investigate the eyewitnesses’ testimony.
In summary, we hold that counsel’s failure to investigate alibi witnesses and interview eyewitnesses is unprofessional conduct falling 12nbelow the standard of a reasonably competent attorney practicing under prevailing professional norms.
[The attorney’s] representation therefore, fails the performance prong of the Strickland test[.]
Id. at 1418,1420.
In the -instant case, Kircus, the defendant’s trial counsel, denied having any recollection of the defendant’s case. He also denied having any independent recollection of any conversations with the defendant regarding eyewitnesses. Therefore, we have no evidence of the trial attorney’s decision-making process or how he went about conducting his pretrial investigation in this case. Nevertheless, we must review this matter in accordance with the standards set forth in Strickland v. Washington, supra.

Deficient Performance

A deficient performance is established by showing that the attorney’s actions fell below the standard of reasonableness and competency required for attorneys in criminal cases and is evaluated from the attorney’s perspective at the time of the occurrence. Strickland v. Washington, supra.
In Strickland v. Washington, supra, the Court stated:
[Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the *297 circumstances, applying a heavy measure of deference to counsel’s judgments.
Id. at 690-691, 104 S.Ct. 2052.
12t Counsel has a duty to make a reasonable investigation, and a decision not to investigate must be assessed for reasonableness under the circumstances. Strickland v. Washington, supra. Counsel’s investigative actions and choices may be influenced by information and decisions from the defendant and, under the circumstances of the case, might diminish or eliminate the need for further investigation. Id.
Counsel is ineffective when he fails to interview known witnesses. State v. Butler, 41,985 (La.App.2d Cir.6/20/07), 960 So.2d 1208, writ denied, 2007-1678 (La.5/9/08), 980 So.2d 685; State v. Moore, 48,769 (La.App.2d Cir.2/26/14), 134 So.3d 1265, writ denied, 2014-0559 (La.10/24/14), 151 So.3d 598. Additionally, a counsel’s performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. State v. Johnson, 582 So.2d 885 (La.App. 4th Cir.1991).

Prejudice

As stated above, under the standard articulated in Strickland v. Washington, supra, the defendant must show that he was prejudiced by his attorney’s deficient performance. More specifically, the defendant must show that counsel’s deficient performance so undermined the proper functioning of the adversarial process and so prejudiced the defendant’s defense that he was deprived of a fundamentally fair trial, one whose result is reliable. Strickland v. Washington, supra; State v. Ball, 554 So.2d 114 (La.App. 2d Cir.1989). It is not sufficient for the defendant to show the error had “some conceivable effect” on the outcome of the proceedings. State v. Butler, supra; State v. Pratt, 26, 862 (La.App.2d Cir.4/5/95), 653 So.2d 174, writ denied, 95-1398 (La.11/3/95), 662 So.2d 9.
|g2In State v. Potter, 612 So.2d 953 (La.App. 4th Cir.1993), writ denied, 619 So.2d 574 (La.1993), the defendant was found guilty of second degree murder. Subsequently, the trial court reversed his conviction, finding that the defendant was denied effective assistance of counsel. More specifically, the trial court found, inter alia, that counsel failed to investigate, interview and subpoena witnesses and failed to obtain exculpatory documentary evidence. The court of appeal affirmed, stating:
This witness’s proposed testimony corroborates the defendant’s theory of self-defense, in that it documents the most serious incident during which the victim harassed and threatened the defendant. * * * It is difficult to determine what effect this testimony might have had on the jury, but it is not unreasonable to conclude, as did the trial court, that this testimony would probably affect the outcome of the trial.
Id. at 958.
In the instant case, the police report stated that both the victim and the defendant had informed the investigating police officers that Rita was an eyewitness to the shooting. Additionally, the defendant asserted that he informed his attorney that Rita had witnessed the shooting and provided the attorney with the names of other potential eyewitnesses, including Willie Smith. In her deposition, Rita testified that police officers never contacted her about the shooting and she did not contact the officers because she did not learn until much later that the defendant had been charged with the shooting. Rita testified unequivocally that the defendant was not the shooter. The defendant and *298 Rita both identified the shooter as “Lil Duke.” Similarly, Smith testified that he was not contacted with regard to the shooting. Smith also testified that he was standing next to the defendant when Shine was shot and the defendant did not have a gun.
[^Further, Golden and some investigators for the public defender’s office stated that the defendant’s trial attorney did not request any investigation in this case or in any of his other cases the year of the defendant’s trial. Golden also stated that an investigation of eyewitnesses would have been mandated, under office policy, in circumstances such as this (when the police department did not have any other evidence; when the defendant denied being the shooter and the defendant claimed that there were eyewitnesses to corroborate his defense).
Pursuant to the jurisprudence cited above, the failure to interview an eyewitness is not a strategic decision and cannot be likened to a decision not to call a witness who has been interviewed and determined by the attorney to be unhelpful or not credible. The record reveals that the eyewitnesses intentionally evaded the police officers on the night of the shooting. However, both Rita and Smith testified that they would have testified (that the defendant was not the shooter) at the defendant’s. trial if they had been asked to do so by defense counsel.
Under the circumstances of this case, where there is no other evidence presented at the defendant’s trial, and the entire case turned.solely on the victim’s identification of the shooter and the credibility of the victim and the defendant, we find that trial counsel’s decision not to investigate any proposed eyewitnesses listed by both the victim and the accused was not reasonable, given the significance those witnesses’ testimony would- have had to the case. We also find that, under the facts of this case, trial counsel’s failure to attempt to locate the known eyewitnesses and interview them constitutes a deficient performance which deprived the defendant of an | ^opportunity to present exculpatory evidence and denied him a fundamental part of the adversarial process.
In some cases addressing this critical issue, the state has presented some .evidence, such as testimony by other witnesses or physical evidence, that can be considered in determining whether the defendant was actually prejudiced by his attorney’s errors to a degree that creates a probability of a different result and that renders the trial fundamentally unfair. However, this case is distinguishable from those cases, in that no other evidence was presented. Thus, the trier of fact was forced to make a credibility determination between the victim and the defendant. The resolution of their conflicting testimony is made less certain, where the defendant consistently stated that he was not the shooter and provided the investigating officers and his' tidal counsel with the names of eyewitnesses who were never contacted and interviewed. Those eyewitnesses later corroborated the defendant’s testimony. Further, as we noted above, the state conceded that this record supports a finding that the defendant’s trial counsel failed to investigate the case or attempt to locate potential -witnesses. The state also conceded that it cannot, in good faith, claim that the defendant received effective assistance of counsel. Under these facts, we find that the defendant did not «receive a fundamentally fair trial, one with a reliable result.
CONCLUSION
For the foregoing reasons, we hereby grant the writ and make it peremptory. The defendant’s application for post-con *299 viction relief is granted. We vacate the defendant’s conviction and sentence and remand this matter for further proceedings.
| aRWBIT GRANTED AND MADE PEREMPTORY; APPLICATION FOR POST-CONVICTION RELIEF GRANTED; CONVICTION VACATED; SENTENCE VACATED; REMANDED.

. The bullet entered Shine's leg, exited the other side, and was never recovered. Shell casings from a .38 caliber handgun were recovered from the crime scene. ’ However, the police officers were unable to locate the gun or any other evidence of the crime.

. In various responses to the defendant’s application, the state argues about "newly-discovered” evidence and sufficiency of evidence. However, the defendant did not make any of those arguments in any of his filings, either directly or indirectly. Therefore, because the defendant never raised any assertions with regard to these issues, and consistently argues ineffective assistance of counsel, we will not address the state's arguments in this opinion.

. The defendant also made the following claims that his attorney:
Failed to file a motion for discovery or disclosure of exculpatory evidence.
Failed to challenge a potential juror for cause during voir dire when the prosecutor, Brian Barber, repeatedly asked the potential juror, Mr. Aaron Hooks, if he told Iris dad "hi” for Barber and asked him to again, say hi to his dad for Barber.
Failed to call the responding officers to testify about their investigation of the scene and canvas of the neighborhood. Det. Russell Ross—who admitted that he did not go to the crime scene or interview any witnesses—was the only law enforcement officer to testify.
Failed to object to Det. Ross’ hearsay testimony with regard to what the other officers told him about their investigation of the crime scene and canvas of the neighborhood.
Failed to object to expert testimony, by Det. Russell Ross, who was not tendered as an expert, that in his experience, gunshot victims rarely lie about who shot them and Shine consistently said that the defendant was the shooter.
Failed to object to Det. Ross’ testimony that the defendant gave inconsistent statements about who shot Shine and failed to introduce the defendant’s statements to rebut the officer's claim. The record shows that the attorney did object to the officer’s testimony about the defendant’s statements and argued that the jury was entitled to hear his actual statements.
Failed to object to the prosecutor’s closing remarks that the defendant failed to produce any witnesses; that the victim was not lying about who shot him; that the defendant was lying and not credible; that people love to blame "the other guy;’’ and that it was reasonable to conclude that the defendant was guilty.

. A review of the record shows that the defendant was actually charged with placing combustible materials, a violation of LSA-R.S. 14:54 (repealed). Prior to the defendant’s trial in the instant matter, the Louisiana Supreme Court declared LSA-R.S. 14:54 unconstitutional. See State v. Palermo, 2000-2488 (La.5/31/02), 818 So.2d 745. In' Palermo, the Court stated:
[LSA-R.S. 14:54] is unconstitutional in that it violates the Due Process Clause of the Fourteenth Amendment by depriving a criminal defendant of a right to a jury determination that he is guilty of every element of the crime with which he is charged, beyond a reasonable doubt. By making ‘the placing of any combustive ... material in or .near any structure ... with the specific intent eventually to set fire to such structure ... an attempt to commit arson within the meaning of the attempt article of this Code,’ the legislature was validly attempting to replace the general attempt provisions of La. R.S. 14:27 with more specific attempt provisions for arson related offenses. However, in directing ‘the court [to] look at Articles 51 through, of 53 of this Code in order to determine which type of arson was attempted,’ the statute unconstitutionally deprives a defendant of the right to a jury determination on all of the elements of the attempted offense.
Id. at 753. The statute was later repealed by Acts 2008, No. 22, § 13, eff. June 14, 2008.

. The defendant’s PCR claim had been assigned to Judge Michael Pitman. It is unclear why Judge Brun issued a ruling.

. Having reached that conclusion, the 'state does not address the following additional claims: (1) the trial attorney was ineffective for failing to move for mistrial after the prosecution made incorrect and prejudicial comments with regard to the defendant’s prior convictions; (2) the trial attorney failed to object to the prosecutor’s prejudicial remarks made during closing and rebuttal arguments; and (3) the trial attorney failed to challenge a juror for impartiality.

. Bryant v. Scott was decided by the federal Fifth Circuit Court of Appeals. However, the case originated in the state of Texas.